# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRYSTAL GARCIA-CONTRERAS,      )
                               )
            Plaintiff,         )
                               )
      v.                       )      1:09CV761
                               )
BROCK & SCOTT, PLLC, and       )
BULLHEAD INVESTMENTS, LLC,     )
                               )
            Defendants.        )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on: (A) the motion to dismiss (Docket Entry 4) filed by Brock & Scott, PLLC ("Brock & Scott") and Bullhead Investments, LLC ("Bullhead," or collectively with Brock & Scott, "Defendants"); (B) the "Motion For Judgment As A Matter Of Law" (Docket Entry 9) filed by Plaintiff Crystal Garcia-Contreras; (C) Garcia-Contreras's motion for summary judgment (Docket Entry 25); (D) Defendants' "Motion To Dismiss And/Or For Summary Judgment" (Docket Entry 26); and (E) the parties' "Consent Motion to Stay Mediation" (Docket Entry 30).

For the reasons set forth herein: (A) Defendants' motion to dismiss (Docket Entry 4) should be granted in part and denied in part; (B) Garcia-Contreras's "Motion For Judgment As A Matter Of Law" (Docket Entry 9) should be denied; (C) Garcia-Contreras's motion for summary judgment (Docket Entry 25) should be granted in part and denied in part; (D) Defendants' "Motion To Dismiss And/Or For Summary Judgment" (Docket Entry 26) should be denied; and (E)

the parties' "Consent Motion To Stay Mediation" (Docket Entry 30) is denied as moot.

## I.  FAIR DEBT COLLECTION PRACTICES ACT

Garcia-Contreras's lawsuit seeks relief on claims brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. (See Docket Entry 1, ¶ 13.)  Congress promulgated the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

"The FDCPA applies only to 'debt collectors' seeking satisfaction of 'debts' from 'consumers'; it does not apply to 'creditors.'"  McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 500 (7th Cir. 2008).  It defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such

2

obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).
The parties do not dispute that Defendants qualify as "debt
collectors," Garcia-Contreras constitutes a "consumer," and the
underlying money sought represents a "debt," within the meaning of
the FDCPA. (Docket Entry 1, ¶¶ 4 & 5; Docket Entry 4, at 8, ¶ 5;
Docket Entry 25, Ex. 2 at 1; Docket Entry 25, Ex. 3 at 1.)[1]

The FDCPA imposes a number of limitations on the conduct of
debt collectors. For example, "[a] debt collector may not use any
false, <u>deceptive</u>, or misleading means in connection with the
collection of any debt." 15 U.S.C. § 1692e (emphasis added).[2] The
FDCPA also provides that "[a] debt collector may not use <u>unfair or
unconscionable means</u> to collect or attempt to collect any debt."
15 U.S.C. § 1692f.[3]

Two of Garcia-Contreras's FDCPA claims are based on 15 U.S.C.
§ 1692g. (Docket Entry 1, ¶ 13.) That section contains two
subparts. Subpart (a) states:

> Within five days after the initial communication with a
> consumer in connection with the collection of any debt,
> a debt collector shall, unless the following information
> is contained in the initial communication or the consumer

---

[1] In her motion for summary judgment, Garcia-Contreras stated: "Notably,
both Defendants admit in their Answer to Plaintiff's Complaint that 'Defendants
are 'debt collectors' as defined by 15 U.S.C. § 1692a(6).'" (Docket Entry 25 at
6 (citing Docket Entry 4 at 8, ¶ 5; and Docket Entry 25, Ex. 2 at 1).)
Defendants did not respond to this argument and have not contested this issue in
their filings with the Court.

[2] That provision has a non-exhaustive list of sixteen subparts identifying
types of conduct that violate this section. 15 U.S.C. § 1692e.

[3] That section includes eight subparts non-exhaustively listing prohibited
conduct. 15 U.S.C § 1692f.

3

has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Subpart (b) provides that a debt collector's failure to cease collection activities during the period after a consumer has made a verification request, but before the debt collector provides the requested verification, violates the FDCPA:

> <u>If the consumer notifies the debt collector in writing within the thirty-day period</u> described in subsection (a) of this section <u>that the debt,</u> or any portion thereof, <u>is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt</u>, or any disputed portion thereof, <u>until</u> the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and <u>a copy of such verification</u> or judgment, or name and address of the original creditor, <u>is mailed to the consumer by the debt collector</u>.

15 U.S.C. § 1692g(b) (emphasis added).

4

In 2006, Congress amended 15 U.S.C. § 1692g(b) by making two additions. Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-2007 (2006). First, it clarified that:

> Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.

15 U.S.C. § 1692g(b). Second, the amendment prohibited acts by a debt collector "during" the thirty-day period that "overshadow" the consumer's right to dispute the debt or request verification information:

> Any collection activities and communication <u>during</u> the 30-day period may not <u>overshadow</u> or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

<u>Id.</u> (emphasis added).

A separate section of the FDCPA imposes civil liability upon a debt collector "who <u>fails to comply</u> with any provision of this title[.]" 15 U.S.C. § 1692k(a) (emphasis added). Plaintiffs may obtain "actual damage[s]" and "costs of the action, together with a reasonable attorney's fee as determined by the court." <u>Id.</u> Moreover, a plaintiff may receive "additional damages" up to a statutory limit of $1,000. <u>Id.</u> If a court finds that a plaintiff brought an FDCPA action "in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." <u>Id.</u>

5

## II. PROCEDURAL BACKGROUND

Garcia-Contreras filed her Complaint on October 1, 2009. (Docket Entry 1.) The Complaint alleges that, "[o]n or about April 15, 2009, Brock & Scott, acting as the attorney and authorized agents of Bullhead, mailed a letter to Plaintiff in an attempt to collect the aforementioned alleged debt." (Id., ¶ 8.) In the April 15th letter, Brock & Scott wrote:

> Re: Your CITIFINANCIAL-ASSOCIATES Account, Now Owned By BULLHEAD INVESTMENTS, LLC
>
> Account number: 09080135912
> Our file number: BUL32123
> Amount Owed $3,132.17, with interest at 0% per annum
>
> August 15, 2009
>
> Dear CRYSTAL G GARCIA,
>
> This law firm has been retained by the above referenced creditor to file a lawsuit against you immediately for the collection of the debt referenced above. However, you can make arrangements to satisfy the balance shown above by contacting our office. If you do not make payment upon this debt in an amount acceptable to our client, we will instruct the Sheriff of your county to serve you with a Court-issued summons at your home, your work, or wherever else you may be found by him. We will then apply to the Court for a Judgment against you, and if Judgment is granted, we may request that the Sheriff enforce the Judgment by levying an execution upon your property not exempt from Judgment.
>
> You may contact our office at **BROCK & SCOTT PLLC, Attn: Collections, at 1315 Westbrook Plaza Dr, Winston-Salem, NC 27103, or by telephone at either (336) 354-0110 or (888) 461-7908.** We will assume this debt is valid unless you dispute the validity of all or part within 30 days of receipt of this letter. If you notify us **in writing** that you dispute all or a portion of this debt, we will send you verification of the debt or a copy of the judgment against you. Upon **written request** within 30 days after receipt of this notice we will provide you with the name and address of the original creditor if different from the creditor named above. For further information on

6

this urgent matter, please contact our office at 336-354-0110 or 888-461-7908 x3114.

(Docket Entry 1, Ex. 1 at 1 (emphasis in original).)

According to the Complaint, "[o]n or about April 21, 2009, [Garcia-Contreras] sent a letter to Brock & Scott explaining the basis upon which she was disputing the alleged debt and requesting that Brock & Scott provide verification of the debt to [her]." (Docket Entry 1, ¶ 10.)  In that letter, she wrote:

> Dear Brock & Scott:
>
> I am writing this letter to dispute a debt that has been placed in your office against me.  Bullhead Investments placed it in your office.  I have not received any correspondences; [sic] by mail nor by phone contact regarding this debt.  According to your letter you sent me, it states the original creditor was Citi Financial. I did have a personal loan with them back in 2001/2003. I contacted their office today . . . .  They stated to me that they show both of my accounts I had with them were closed and paid.  I informed them that I received a letter regarding a balance that I supposedly owed them. Citi Financial told me that the accounts are so old that they do not have much information to give me.  Only that they were paid and that there are no notes on the account that show in [sic] was charged off/turned over to collections for non-payment.  Therefore, if you would please send me something showing I owe this because according to the office where the loans were given to me I owe nothing.  I have enclosed a fax that I received from Citi Financial showing the accounts closed and paid. They were sent to me today from a rep. of Citi Financial.

(Docket Entry 1, Ex. 2 at 1.)  The Complaint alleges that Garcia-Contreras "did not receive a response from Brock & Scott to her request for verification of the alleged debt."  (Id., ¶ 11.)

It further asserts that, "on May 15, 2009, Brock & Scott, acting as the attorneys and authorized agents of Bullhead, filed a lawsuit against [Garcia-Contreras], in the Guilford County, General

7

Court of Justice, District Court Division, attempting to collect the debt allegedly owed by [her] to Bullhead." (<u>Id.</u>)[4] According to the Complaint, "[a]ll of the actions of Brock & Scott . . . were undertaken in its capacity as the attorneys and authorized agents of Bullhead." (<u>Id.</u>, ¶ 12.) "Count I," the only count in the Complaint, asserts that Defendants violated the FDCPA by:

1) "Participating in collection activities which <u>overshadowed</u> and/or were inconsistent with Plaintiff's right to dispute the debt or to request the name and address of the original creditor, in violation of 15 U.S.C. § <u>1692g(b)</u>" (<u>id.</u>, ¶ 13a (emphasis added));

2) "Failing to <u>cease collection</u> activities prior to providing verification of the alleged debt, where Plaintiff notified Defendants in writing within the applicable 30 day period that the debt was disputed, in violation of 15 U.S.C. § <u>1692g(b</u>)" (<u>id.</u>, ¶ 13b (emphasis added)); and

3) "[A]cting in an otherwise <u>deceptive</u>, <u>unfair and unconscionable</u> manner and <u>failing to comply</u> with the FDCPA" (<u>id.</u>, ¶ 13c (emphasis added)).

On October 27, 2009, Defendants filed their "Joint Motion to Dismiss, Answer, Affirmative Defense, and Counterclaim of Defendants." (Docket Entry 4.)[5] In their Answer, Defendants

---

[4] The Exhibit 3 to the Complaint, which includes the state court complaint does not include a summons or any attachments to the state court complaint. (<u>See</u> Docket Entry 1, Ex. 3.)

[5] Defendants' failed to file a supporting brief. "All motions . . . shall be accompanied by a brief except as provided in section (j) of this rule." M.D.N.C. R. 7.3(a). Section (j) does not exempt motions to dismiss. <u>See</u>
(continued...)

asserted a "Counterclaim" in which they alleged that Garcia-Contreras "filed [her] Complaint . . . in bad faith for purposes of harassing [Defendants], and otherwise interfering with their lawful efforts to collect a just and valid debt due from [her] to Defendant Bullhead . . . ." (Id. at 12.) Defendants also alleged that they "are entitled to a declaratory Judgment . . ., pursuant to Rule 57 of the Federal Rules of Civil Procedure, that the acts and omissions of the Defendants as complained of in [Garcia-Contreras's] Complaint, do not give rise to [her] cause of action for violation of the FDCPA." (Id.)

Garcia-Contreras then filed "Plaintiff's Response to Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment as a Matter of Law." (Docket Entry 9.) On January 21, 2010, the Honorable United States Magistrate Judge P. Trevor Sharp ordered that "the pending motion to dismiss filed by Defendants (Docket No. 4) and the motion for judgment on the pleadings filed by [Garcia-Contreras] (Docket No. 9) should be deferred and postponed until the time of trial or a ruling on any motion for summary judgment filed by any party, whichever first occurs." (Docket Entry 12 at 1.)

---

[5](...continued)

M.D.N.C. R. 7.3(j). "A motion unaccompanied by a required brief may, in the discretion of the court, be summarily denied." M.D.N.C. R. 7.3(k). Garcia-Contreras's "Motion For Judgment As A Matter Of Law" and motion for summary judgment suffer from the same problem. (See Docket Entries 9, 25.) Both parties have also attempted to address different motions in the same filing. (See Docket Entries 9, 26, 29.) Under these circumstances, the Court could, but will not, sua sponte strike the documents. See M.D.N.C. R. 83.4(3). The Court advises the parties to pay closer attention to the Local Rules.

On January 20, 2010, the parties submitted their Joint Rule 26(f) Report, in which they stated that they were "not aware of this case having been selected for mediation. However, the parties do not object to referral of this case to mediation upon completion of discovery." (Docket Entry 11 at 2.) On January 21, 2010, Judge Sharp entered another Order approving the parties' Joint Rule 26(f) Report and selecting the case for mediation. (Docket Entry 13 at 1.) On April 21, 2010, the parties' filed a Joint Motion to Defer Mediation until September 1, 2010 (Docket Entry 17), which the Court granted (Docket Entry 18).

On June 24, 2010, Garcia-Contreras moved for summary judgment (Docket Entry 25) and Defendants thereafter responded with a document styled as a "Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Motion to Dismiss and/or for Summary Judgment" (Docket Entry 26). Garcia-Contreras then filed a document styled as both a Reply to her motion for summary judgment and a Response to Defendants' motion for summary judgment. (Docket Entry 29.) On October 8, 2010, the parties' filed their Consent Motion to Stay Mediation. (Docket Entry 30.)

## III.  DISCUSSION

### A.  Defendants' Motion to Dismiss (Docket Entry 4)

In this motion, Defendants asserted that Plaintiff failed to state a claim within the meaning of Federal Rule of Civil Procedure 12(b)(6).

10

### 1. Standard

A motion to dismiss pursuant to Rule 12(b)(6), "challenges the legal sufficiency of a complaint considered with the assumption that the facts are alleged to be true." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). A complaint falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[6]

### 2. Analysis

#### a. Overshadowing Claim

Garcia-Contreras's Complaint alleges that Defendants "[p]articipat[ed] in collection activities which overshadowed

---

[6] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis</u>, 588 F.3d at 193.

and/or were inconsistent with [her] right to dispute the debt or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b)." (Docket Entry 1, ¶ 13a.) Defendants argue that this claim fails as a matter of law. (Docket Entry 4 at 2-5.) Garcia-Contreras responds that she has alleged a claim under 15 U.S.C. § 1692g(b). (Docket Entry 9 at 7-17.) The Court should find that Garcia-Contreras has failed to state a claim of overshadowing under § 1692g(b).

As noted above, in her Complaint and her post-Complaint filings, Garcia-Contreras has asserted an overshadowing claim under 15 U.S.C. § 1692g(b). Said subsection addresses matters that occur <u>during</u> the thirty-day period after an initial communication from a debt collector. <u>See</u> 15 U.S.C. § 1692g(b). In her Complaint and her response to Defendants' motion to dismiss, however, Garcia-Contreras focused on the alleged inadequacy of the initial communication, Defendants' April 15th letter. (<u>See</u> Docket Entry 1, ¶ 9; Docket Entry 9 at 7-17.)

Accordingly, Garcia-Contreras has failed to allege a viable overshadowing claim under 15 U.S.C. § 1692g(b).

b. Cease Collection Claim

Garcia-Contreras's second claim asserts that Defendants violated 15 U.S.C. § 1692g(b) when they failed to "cease collection activities prior to providing verification of the alleged debt . . . ." (Docket Entry 1, ¶ 13b.) More specifically, it alleges that, although she requested verification after receiving the April 15th letter, she did not receive a response with the

12

verification before Defendants filed a state lawsuit against her. (<u>Id.</u>, ¶ 11.)  Defendants make two arguments for dismissal of this second claim.  (Docket Entry 4 at 5-7.)  First, they claim that the "commencement of litigation does not constitute collection activity[.]" (<u>Id.</u> at 5.)  Second, they assert that their delivery of the state complaint satisfied the request for validation of the debt.  (<u>Id.</u>)

In support of their first argument, Defendants provide an incomplete quote, "'The debt collector is perfectly free to sue within thirty days . . .'" (Docket Entry 4 at 6 (citing <u>Bartlett v. Heibl</u>, 128 F.3d 497, 501 (7th Cir. 1997))), as authority that institution of litigation fails to qualify as collection activity (Docket Entry 4 at 6).  In the quoted case, the United States Court of Appeals for the Seventh Circuit reversed a district court's finding regarding the lawfulness of an initial communication letter.  <u>See</u> Bartlett, 128 F.3d at 501-02.[7]  In rejecting the plaintiff's contention that a debt collector must refrain from even alluding to its right to bring a lawsuit within the thirty-day period, the Seventh Circuit stated:  "The debt collector is perfectly free to <u>sue</u> within thirty days; he just must cease his <u>efforts at collection</u> during the interval between being asked for verification of the debt and mailing the verification to the debtor." <u>Id.</u> (emphasis added).  The Seventh Circuit, in the clause

_____

[7] The letter included a notice that the debtor could contest the debt within thirty days, but also contained a threat of a lawsuit if the debt was not paid within a week of the letter.  <u>Bartlett</u>, 128 F.3d at 499-501.

13

that Defendants omit, equated a lawsuit to collection efforts. Thus, Bartlett contradicts Defendants' position.

Moreover, the United States Supreme Court has held that the FDCPA applies to the litigation conduct of attorneys and explained that such conduct constitutes collection activity. Heintz v. Jenkins, 514 U.S. 291, 294 (1995). In that case, the plaintiff had brought a FDCPA action against the creditor's attorney and the attorney's law firm alleging that the attorney, in an effort to settle the suit, wrote to plaintiff's lawyer and falsely stated the amount plaintiff owed for a car loan. Id. at 293-94. The district court dismissed the action on the ground that the FDCPA does not apply to lawyers engaging in litigation. Id. at 294. The Seventh Circuit reversed, "interpreting the FDCPA to apply to litigating lawyers." Id. The Supreme Court affirmed the Seventh Circuit and held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Id. at 299 (emphasis added).

In so doing, the Supreme Court equated such litigation with collection activities, reasoning that:

> In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. See, e. g., Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").

14

Id. at 294 (italicized emphasis in original, underlined emphasis added).  In light of the foregoing authority, Defendants' argument in this regard lacks merit.[8]

Defendants next argue that the state complaint and its attachments provide sufficient validation of the debt.  (Docket Entry 4 at 7-13.)  The Fourth Circuit has explained that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."  Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999).[9]  This Court, per Chief Judge James A. Beaty, Jr., has recognized that debt collectors lawfully may validate a debt with "documents attached to the State Complaint."  Gough v. Bernhardt & Strawser, PA, No. 1:05CV00398, 2006 U.S. Dist. LEXIS 47785, at *16 (M.D.N.C. June 30, 2006) (unpublished).  In Gough, the debt collector had attached an affidavit from the creditor and a copy of the plaintiff's credit card statement, both of which verified the debt and provided the

---

[8] Other courts have also found the position taken by Defendants unpersuasive; for example, one court stated that a lawsuit of this sort "obviously" constitutes an attempt to collect a debt and described the defendants' contrary assertion as "patently frivolous."  Anderson v. Frederick J. Hanna & Assocs., 361 F. Supp. 2d 1379, 1383 (N.D. Ga. 2005).

[9] Garcia-Contreras argues that the FDCPA does not define "verification" and presents the Court with a definition from the dictionary.  (Docket Entry 9 at 17 n.7.)  In addition, she cites decisions from district courts outside the Fourth Circuit, a House of Representatives committee report, and remarks by an individual senator in the Congressional Record.  (Docket Entry 9 at 17 n.8, 18.)  The Court need not determine what weight to afford those authorities, in light of Chaudhry.

15

plaintiff with the original creditor's name and address.  See id. at *14-15.

Defendants argue that they satisfied their verification obligations because the state court complaint is supported by an affidavit from a Bullhead employee.  (Docket Entry 4 at 7.) Garcia-Contreras asserts that the state complaint and attachments were insufficient, because they lacked "a single document or statement from the creditor," or "any itemization of the debt or certification from the creditor that the debt had not been paid." (Docket Entry 9 at 18-19.)  The Court, however, need not consider these arguments, because any attachments to the state complaint are absent from the record.  Given that Defendants' argument turns on the content of materials unavailable to the Court, they cannot prevail as a matter of law at this time.

In sum, Defendants have not shown that the Complaint fails to state a plausible cease collection claim.  Therefore, Defendants' motion to dismiss that claim should be denied.

### c.  Third "Claim"

Garcia-Contreras's third claim alleges that Defendants violated the FDCPA "[b]y acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA." (Docket Entry 1, ¶ 13c (emphasis added).)  Defendants argue that this claim is conclusory and "unsupported by reference to any act or omission pleaded in the Complaint."  (Docket Entry 4 at 7.) Garcia-Contreras did not respond to their argument.  (See Docket Entry 9.)

16

This claim appears to represent a conglomeration of different FDCPA sections including § 1692e ("deceptive"), § 1692f ("unfair or unconscionable means") and § 1692k ("fails to comply"). See 15 U.S.C. §§ 1692e, 1692f & 1692k. Sections 1692e and 1692f are not written in a manner that either one would entirely encompass Garcia-Contreras's claim as alleged. For example, § 1692f prohibits "deceptive," but not "unfair and unconscionable means," which falls under § 1692e. See 15 U.S.C. §§ 1692e & 1692f. Therefore, the claim must be based on 15 U.S.C. § 1692k, because that section incorporates "any provision of this title[,]" a phrase that encompasses the conduct proscribed by both § 1692e and § 1692f.

Moreover, although the Complaint and response to the motion to dismiss do not state that the third claim relies upon § 1692k (see Docket Entries 1 & 9), Garcia-Contreras's motion for summary judgment does. In that motion, she has a section titled, "The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt." (Docket Entry 25 at 3 (emphasis omitted and normal capitalization usage applied).) Under that section, Garcia-Contreras cites 15 U.S.C. § 1692k for the proposition that "[t]he FDCPA imposes civil liability upon any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights." Id. (emphasis added). Her

17

explanation clarifies that the third claim refers to 15 U.S.C. § 1692k as a basis to impose civil liability upon Defendants for violations of the FDCPA's substantive provisions.

Furthermore, another portion of Garcia-Contreras's summary judgment motion lends support to this interpretation. The motion states that "Defendants' actions do in fact constitute <u>two</u> separate violations of the FDCPA." (Docket Entry 25 at 18.) If Garcia-Contreras's third "claim" was a claim for relief under § 1692e or § 1692f, Garcia-Contreras would have written that Defendants' actions constitute "three" separate FDCPA violations. Accordingly, to the extent she has alleged a third claim, Garcia-Contreras has not premised said claim on a section of the FDCPA setting forth prohibitions, but rather on § 1692k.

As noted above, Garcia-Contreras has stated a claim that Defendants failed to cease collection activities as required by 15 U.S.C. § 1692g(b), and therefore she may potentially recover damages under 15 U.S.C. § 1692k. As other courts have explained, however, § 1692k does not provide a separate basis for relief. As one court stated, "§ 1692k simply lays out the substantive and procedural requirements for civil actions brought under the FDCPA and does not provide an additional basis for relief." <u>Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.</u>, 701 F. Supp. 2d 340, 355-56 (E.D.N.Y. 2010) (denying motion to amend to add a claim under 15 U.S.C. § 1692k as futile). <u>See also</u> <u>Wood v. Midland Credit Mgmt.</u>, No. CV 05-3881 (MANx), 2005 U.S. Dist. LEXIS 31923, at *6 (C.D. Cal. July 29, 2005) (unpublished) (granting motion to dismiss,

18

because "*Section 1692k* is a damages statute that does not form its own independent basis for a cause of action" (emphasis in original)).

Section 1692k does not provide a separate basis for relief. Therefore, Defendants' motion to dismiss Garcia-Contreras's third "claim" should be granted.[10]

### 3. Conclusion

Defendants' motion to dismiss should be granted with respect to Garcia-Contreras's first and third claims for relief, but should be denied with respect to Garcia-Contreras's second claim, i.e., the claim under 15 U.S.C. § 1692g(b) for failure to cease collection activities.

### B. Garcia-Contreras's "Motion For Judgment As A Matter Of Law" (Docket Entry 9)

Garcia-Contreras's "Motion For Judgment As A Matter Of Law" appears to represent a motion for judgment on the pleadings, because it relies on the pleadings and not any additional evidence, see Fed. R. Civ. P. 12(c) & 50(a). This interpretation coincides with Judge Sharp's construction of the motion. (Docket Entry 12 at 1.)[11]

_____

[10] This section would remain available as a damages remedy, if Garcia-Contreras prevailed on her surviving cease-collection claim under § 1692g(b).

[11] Furthermore, said motion references the motion for judgment on the pleadings standard. (Docket Entry 9 at 1 n.1.)

### 1. Standard

Rule 12(c) states that "a party may move for judgment on the pleadings" subsequent to the close of the pleadings, "but early enough not to delay trial." Fed. R. Civ. P. 12(c). The court assumes "the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [the non-movant's] favor." Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). "[A] court ruling on a Rule 12(c) motion may consider the answer as well as the complaint." In re Stucco Litig., 364 F. Supp. 2d 539, 541 (E.D.N.C. 2005). The standards for a Rule 12(c) motion and a motion filed under Rule 12(b)(6) otherwise overlap. Continental Cleaning Serv. v. United Parcel Serv., Inc., No. 1:98CV1056, 1999 WL 1939249, at *2 (M.D.N.C. Apr. 13, 1999) (unpublished) (Sharp, M.J.) ("[A] motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) are considered under a similar standard, with the key difference being that on a 12(c) motion, 'the court is to consider the answer as well as the complaint.'" (citation omitted)).

### 2. Analysis

Garcia-Contreras's instant motion addresses her first and second claims. (Docket Entry 9.) In light of the disposition of Defendants' motion to dismiss, the Court need only consider her arguments related to the second claim. In this regard, Garcia-Contreras argues that Defendants' attachment to the state court complaint constituted an insufficient verification of the disputed debt (and thus that their collection efforts in the form of the

20

state court complaint violated the pre-verification collection ban in § 1692g(b)). (Id. at 18.) As noted in the discussion of Defendants' motion to dismiss, the Court cannot determine the sufficiency of Defendants' verification because the attachments to the state court complaint are absent from the record. Therefore, Garcia-Contreras's motion for judgment on the pleadings (Docket Entry 16) should be denied.

C. Garcia-Contreras's Motion for Summary Judgment (Docket Entry 25)

1. Standard

Summary judgment is appropriate where the evidence on file shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A fact is material only if it might affect the outcome of the case under the governing law. Id. at 248. The Court must view the evidence and any reasonable inferences drawn from the evidence in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

The moving party may discharge its burden by identifying an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Accord Simmons-Blount v. Guilford County Bd. of Educ., No. 1:06CV944, 2010 U.S. Dist. LEXIS 34485, at *8–9 (M.D.N.C. Apr. 7, 2010)

21

(unpublished) (Beaty, C.J.). The non-moving party must then "set forth specific facts showing that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586-87 (citation omitted) (emphasis in original). The nonmoving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the nonmoving party. <u>Anderson</u>, 477 U.S. at 252 (citation omitted). <u>Accord Simmons-Blount</u>, 2010 U.S. Dist. LEXIS 34485, at *8-9. <u>See also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

## 2. Analysis

Garcia-Contreras has moved for summary judgment with respect to her first and second claims and Defendants' counterclaims. (Docket Entry 25.) Her arguments as to the first claim again focus on the April 15th letter, which for reasons noted in connection with Defendants' motion to dismiss, cannot sustain an overshadowing claim under Section 1692g(b). Accordingly, the discussion that follows will focus on: (a) Garcia-Contreras's second claim; and (b) Defendants' counterclaims.

### a. Cease Collection Activities

Garcia-Contreras argues that the state complaint and attached materials do not constitute sufficient verification of the debt. (Docket Entry 25 at 15-17.) Defendants respond that: (i) the filing of the state court civil action does not qualify as

collection activity; (ii) even if the filing of the lawsuit constituted collection activity, Garcia-Contreras received the required validation; and (iii) the United States Constitution bars her claim. (Docket Entry 26 at 6-13.)

### i. Lawsuit as Collection Activity

The foregoing discussion of Defendants' motion to dismiss demonstrated that a lawsuit constitutes collection activity. To the extent Defendants have raised additional contentions on this subject, their argument still falls short.

In this regard, Defendants assert that the term "collection" should be construed in a manner that exempts litigation. (Docket Entry 26 at 6-8.) In support of this position, they cite dictionary definitions (id. at 6-7 (citing Webster's Third New Int'l Dictionary (Unabridged) 444 (2002); The Oxford English Dictionary 476 & 478 (1989))), and state that the FDCPA lists prohibited collection activity without reference to lawsuits (id. at 7 (citing 15 U.S.C § 1692d and 15 U.S.C. § 1692f).)[12] Defendants' arguments in this regard cannot overcome the force of contrary case law discussed in Section III.A.2.b.

As a final matter, Defendants cite Green v. Hocking, 9 F.3d 18, 21 (6th Cir. 1993), for the proposition that the FDCPA does not govern attorneys engaged in the practice of law. (Docket Entry 28 at 8.) The Supreme Court, however, acknowledged Green and overruled it. See Heintz, 514 U.S. at 294. Defendants assert that

---

[12] Defendants recognize that 15 U.S.C. § 1692i addresses legal action by debt collectors, but assert that said section only constitutes a venue provision. (Docket Entry 26 at 7-8.)

23

Heintz only stands for the proposition that the FDCPA applies to both attorneys and non-attorneys, not the proposition that collection activities include litigation. (Docket Entry 26 at 9.) Defendants' contention in this regard does not represent a fair reading of Heintz, which specifically refers to litigation as constituting collection activity. See Heintz, 514 U.S. at 294.

In sum, Defendants have failed to show that their filing of a lawsuit does not qualify as collection activity under the FDCPA.

### ii. Provision of Verification

Defendants next argue that, if they engaged in collection activity by instituting a lawsuit, they satisfied their verification obligation through the filing of the lawsuit. (Docket Entry 26 at 6.) This argument was discussed in connection with Defendants' motion to dismiss and it was noted that Defendants' arguments on this point require scrutiny of the attachments to the state court complaint. As part of their summary judgment filings, the parties' have not provided the Court with the attachments to the state court complaint. (See Docket Entries 25, 26 & 29.)

Defendants, however, have added an argument that, even if the a state court lawsuit constitutes a collection activity,

> that attempt was commenced by the Guilford County, North Carolina Sheriff (acting through his lawful deputy) serving the Plaintiff herein with a copy of the summons . . ., a copy of the complaint setting forth the amount demanded by the creditor, and an affidavit attached thereto in which an officer of the creditor certified under oath the amount demanded from the debtor.

(Docket Entry 26 at 9.) As Garcia-Contreras observes, Defendants admit that they "caused the Sheriff . . . to serve" any documents

24

upon Garcia-Contreras. (Docket Entry 29 at 6.) Moreover, Garcia-Contreras notes that Defendants' filing of the state court complaint and payment of fees initiated the Sheriff's service upon Garcia-Contreras. (<u>Id.</u> at 6-7.)

In North Carolina, "[a] civil action is commenced by filing a complaint with the court." N.C. Gen. Stat. 1A-1, N.C. R. Civ. P. 3(a). "When the complaint is filed it shall be served in accordance with the provisions of Rule 4[ of the North Carolina Rules of Civil Procedure] or by registered mail if the plaintiff so elects." <u>Id.</u>[13] Rule 4 of the North Carolina Rules of Civil Procedure provides that, after filing a complaint, the plaintiff shall deliver the complaint and summons "to some proper person for service." N.C. Gen. Stat. 1A-1, N.C. R. Civ. P. 4(a). "In [North Carolina], such proper person shall be the sheriff of the county where service is to be made or some other person duly authorized by law to serve summons." <u>Id.</u> To the extent Defendants argue that the Sheriff (not they) made collection actions, they ignore the foregoing state laws that require the Sheriff to act only upon the filing of a complaint by a plaintiff.

Defendants also assert that the "summons and complaint are themselves the validation to which Plaintiff is entitled." (Docket

---

[13] Alternatively, a party may also commence a civil action "by the issuance of a summons" if that person "makes application to the court stating the nature and purpose of his action and requesting permission to file his complaint within 20 days[,]" and the court issues an order "stating the nature and purpose of the action and granting the requested permission." N.C. Gen. Stat. 1A-1, N.C. R. Civ. P. 3(a). The service of that summons and order must occur in accordance with Rule 4 of the North Carolina Rules of Civil Procedure. <u>Id.</u>

Entry 26 at 10.)[14]  The complaint, even with a summons, could not be a sufficient verification notice.  "[V]erification of a debt involves . . . the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed[.]" Chaudhry, 174 F.3d at 406.  A complaint does not constitute a written confirmation by the debt collector, rather it represents Bullhead's attorney's attempt to collect a debt.  Moreover, this Court, per Chief Judge Beaty, has recognized that documents attached to the complaint, such as an affidavit from the creditor, may provide sufficient verification.  Gough, 2006 U.S. Dist. LEXIS 47785, at *14-16.  If a complaint by itself sufficed, the Court's reference to attachments would be superfluous.  Defendants' assertion in this regard thus conflicts with Chaudhry and Gough.

A genuine issue of material fact remains as to whether Defendants provided adequate verification or if, instead, their filing of the state court complaint violated the pre-verification ban on collection activity.

### iii.  Constitutional Arguments

Finally, Defendants raise three constitutional arguments against the imposition of FDCPA liability premised on Defendants' "filing of the summons and complaint and service of Plaintiff[.]" (Docket Entry 26 at 10.)  First, they argue that the FDCPA's application to this activity contravenes the Noerr-Pennington doctrine.  (Id. at 10-11.)  Second, they assert Congress lacked

---

[14] Defendants have not provided the Court with the summons.  (See Docket Entry 26.)

power under the "Commerce Clause" to promulgate the FDCPA's "prohibition on commencing and/or continuing litigation in the courts of the several states[.]" (Id. at 10-12.) Third, they contend that said prohibition "amounts to a deprivation of the creditor's property right without due process, contrary to the Fifth Amendment to the United States Constitution." (Id. at 11.)

## I. Noerr-Pennington Doctrine

Defendants argue that the FDCPA, "if interpreted in the manner suggested by Plaintiff's counsel," would impose "civil liability upon a litigant and counsel, as a direct result of the prosecution of a non-frivolous state court claim . . . ." (Docket Entry 26 at 11.) Defendants argue that "the prosecution of a meritorious lawsuit is a protected activity" and the application of the FDCPA to Defendants' activity would "chill" Defendants' exercise of their rights under the United States Constitution. (Id.)

Under the Petition Clause of the First Amendment to the United States Constitution, "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." The Supreme Court has recognized the "right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights[.]'" BE&K Constr. Co. v. NLRB, 536 U.S. 516, 524 (2002) (quoting United Mine Workers v. Illinois Bar Ass'n, 389 U.S. 217, 222 (1967)). "The Noerr-Pennington doctrine grants First Amendment immunity to those who engage in petitioning activity." IGEN Int'l, Inc. v. Roche Diagnostics GMBH, 335 F.3d 303, 310 (4th Cir. 2003) (emphasis in original) (citing

27

<u>United Mine Workers of Am. v. Pennington</u>, 381 U.S. 657, 670 (1965), and <u>Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127, 138 (1961)).[15]  In the Fourth Circuit, "[t]he application of *Noerr-Pennington* is a question of law."  <u>Id.</u> (emphasis in original).

As previously noted, the Supreme Court has stated that litigation qualifies as collection activity under the FDCPA.  <u>See</u> <u>Heintz</u>, 514 U.S. at 299 (holding that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, <u>even when that activity consists of litigation</u>." (emphasis added)).  In light of <u>Heintz</u>, courts have found that the Noerr-Pennington doctrine does not provide litigants protection from FDCPA actions.  <u>See, e.g.</u>, <u>Gionis v. Javitch, Block & Rathbone, LLP</u>, 238 Fed. Appx. 24 (6th Cir. 2007).  In <u>Gionis</u>, the United States Court of Appeals for the Sixth Circuit held that the "Right to Petition under the *First Amendment*" did not provide immunity to "shield[] [the defendant] from liability under the [FDCPA]." <u>Id.</u> at 25-26 (emphasis in original).  The Sixth Circuit based its holding on <u>Heintz</u>'s statement that the FDCPA applies "*even when that activity consists of litigation.*" <u>Id.</u> (emphasis in original).

More recently, the Sixth Circuit again explained that "the Supreme Court's conclusion in [<u>Heintz</u>], indicates that the FDCPA is

---

[15] The Noerr-Pennington doctrine originally arose out of two antitrust decisions, <u>Pennington</u>, 381 U.S. at 670, and <u>Noerr Motor Freight, Inc.</u>, 365 U.S. at 138, but "is based on and implements the First Amendment right to petition and therefore, with one exception [for sham litigation], applies equally in all contexts[,]" <u>White v. Lee</u>, 227 F.3d 1214, 1232 (9th Cir. 2000).

intended to burden debt-collectors even when they are engaged in litigation." Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 615 (6th Cir. 2009). The Hartman Court continued that, in light of Heintz's conclusion "that the FDCPA does apply to litigation-related activity, we believe that *Gionis* correctly concluded that the First Amendment does not shield lawyers engaged in litigation from FDCPA liability. The opposite conclusion, that the *First Amendment* prohibits FDCPA suits based on statements made during judicial proceedings, would negate the Supreme Court's holding that the FDCPA 'does apply to lawyers *engaged in litigation*.'" Id. at 616 (internal citations omitted, emphasis in original).[16]

Under these circumstances, Defendants' reliance on the Noerr-Pennington doctrine as a bar to Garcia-Contreras's FDCPA claim is not well-founded.

## II.  Commerce Clause Protection

Defendants next rely on United States v. Lopez, 514 U.S. 549 (1995), to argue that the FDCPA regulates activity in a manner that exceeds Congress' Commerce Clause power.  (Docket Entry 26 at 12.) Defendants explain their position as follows:

> [T]he initiation and prosecution of a civil lawsuit is a non-economic activity . . . . By definition, a lawsuit is not a commercial transaction: it involves no exchange of

---

[16]  For its part, the Fourth Circuit has not directly addressed the Noerr-Pennington issue in this context, but has stated that "[a]ll circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition." Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 232 (4th Cir. 2007) (emphasis added) (discussing the absence of any "absolute common law litigation immunity" from the FDCPA).

goods, services, or intangibles of value; it is at least
with respect to the defending party, an involuntary
transaction; and, at most significantly, it is an
expression of the sovereign authority of a state of the
Union. That the operation of the state's court systems
has historically been understood to be an essential
attribute of the system of dual sovereigns established by
our Constitution . . . simply lends further credence to
the idea that the FDCPA's purported prohibition upon
state court litigation activity is not a regulation of a
commercial activity. Even if state court litigation is
commerce, it is not "among the several states", as such
activity necessarily takes place only in a single state:
the one within which the litigation is prosecuted.

(Docket Entry 26 at 12.) Garcia-Contreras responds that
Defendants' position has "been rejected by several Federal courts."
(Docket Entry 29 at 8 (citing, inter alia, <u>Hartman</u>, 569 F.3d at
617, and <u>Delawder v. Platinum Fin. Serv. Corp.</u>, 443 F. Supp. 2d
942, 951 (S.D. Ohio 2005)).)

In <u>Lopez</u>, the Supreme Court identified three categories of
activity that Congress could regulate under its commerce power:

First, Congress may regulate the channels of interstate
commerce. Second, Congress is empowered to regulate and
protect the instrumentalities of interstate commerce, or
persons or things in interstate commerce, even though the
threat may come only from interstate activities.
Finally, Congress' commerce authority includes the power
to regulate those activities having a substantial
relation to interstate commerce, those activities that
substantially affect interstate commerce.

<u>Id.</u> at 558-59. The Supreme Court then explained that the Gun-Free
School Zones Act was a "criminal statute that by its terms has
nothing to do with 'commerce' or any sort of economic
enterprise . . ." and could not be a regulation of activity
connected with a commercial transaction. <u>Id.</u> at 561. Moreover,
the Supreme Court noted the absence of a statutory jurisdictional
element that would ensure that the targeted activity affected

30

interstate commerce and of congressional findings regarding the regulated activities' affect on interstate commerce. <u>Id.</u> at 561-62. Finally, the Supreme Court declined to adopt the Government's contention that "possession of a firearm in a local school zone does indeed substantially affect interstate commerce[,]" because that position would convert Congress' Commerce Clause authority to a general police power. <u>Id.</u> at 563 & 567.

Unlike the Gun-Free School Zones Act, the FDCPA relates to commercial activity in that it seeks to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Moreover, Congress specifically made findings regarding the relationship of abusive debt collection to interstate commerce: "Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce." 15 U.S.C. § 1692(d).

For these and other reasons recognized by other courts, Defendants' argument that the FDCPA exceeds Congress' Commerce Clause authority lacks merit. <u>See</u>, <u>e.g.</u>, <u>Blevins v. Hudson & Keyse, Inc.</u>, 395 F. Supp. 2d 655, 660-61 (S.D. Ohio 2004).

31

<u>III.  Due Process Violation</u>

As a final matter, Defendants argue that "the prohibition upon commencing and/or continuing litigation in the courts of the several states amounts to a deprivation of the creditor's property right without due process contrary to the Fifth Amendment to the United States Constitution."  (Docket Entry 26 at 11.)  Defendants cite no authority and provide no additional discussion to explain the basis of their argument.  (<u>See</u> <u>id.</u>)  The Court should treat this argument as asserting substantive due process rights.  <u>See</u>, <u>e.g.</u>, <u>Hammond v. United States</u>, 786 F.2d 8, 11-13 (1st Cir. 1986)(treating due process challenge to congressional enactment that altered availability of cause of action as substantive due process claim).

The Fifth Amendment to the United States Constitution states that "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S Const. amend. V. The Fourth Circuit has explained that to establish a violation of substantive due process litigants must "demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that <i>no process</i> could cure the deficiency." <u>MLC Automotive, LLC v. Leith of Fayetteville, Inc.</u>, 532 F.3d 269, 281 (4th Cir 2008) (internal quotation marks omitted, emphasis in original).  Defendants assert a protected property interest in "commencing and/or continuing litigation in the courts of the

32

several states[.]" (Docket Entry 26 at 11.) Defendants' asserted property interest thus mirrors their First Amendment argument.

A court need not consider an alleged violation of substantive due process when other provisions of the United States Constitution encompass the conduct underlying a substantive due process argument. See Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" (citing Graham v. Connor, 490 U.S. 386, 395 (1989))). As a result, the Sixth Circuit rejected a due process claim of this sort:

> Great Seneca and Javitch also argue that this application of the FDCPA violates their rights to substantive due process. However, "the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged . . . ." Montgomery v. Carter County, 226 F.3d 758, 769 (6th Cir. 2000). Here it seems that any substantive-due-process argument Great Seneca and Javitch have is encompassed by their First Amendment claims. Accordingly, we will not independently consider their assertion of a violation of substantive due process.

569 F.3d at 617. This Court similarly should reject Defendants' Fifth Amendment argument.

### iv. Summary

Lawsuits can qualify as collection activity within the meaning of the FDCPA. Because the attachments to the state court complaint were not provided to the Court, a material factual issue exists about whether Defendants provided Garcia-Contreras with a

33

sufficient verification of the debt prior to the commencement of the state court lawsuit. Defendants' constitutional challenges lack merit. Accordingly, summary judgment is not warranted with respect to Garcia-Contreras's claim for failure to cease collection activity.

### b. Defendants' Counterclaims

Garcia-Contreras seeks summary judgment on both of Defendants' counterclaims. (Docket Entry 25 at 18-19.) Defendants have failed to respond to her arguments in this regard. (See Docket Entry 26.)

Defendants counterclaimed for a declaratory judgment that "the acts and omissions of the Defendants" in the Complaint "do not give rise to Plaintiff's cause of action for [a] violation of the FDCPA." (Docket Entry 4 at 12.) Garcia-Contreras argues that Defendants' actions "do in fact constitute two separate violations of the FDCPA" and she claims that she has demonstrated that there is no genuine issue of material fact with respect to either claim. (Docket Entry 25 at 18.) As explained in the foregoing sections, Garcia-Contreras's first and third claims should be dismissed. Moreover, material questions of fact remain with respect to her second claim. Therefore, Garcia-Contreras's motion for summary judgment with respect to this counterclaim should be denied.

Defendants also counterclaimed that Garcia-Contreras filed her suit in "bad faith" and to "harass" Defendants and to "interefer[e] with their lawful efforts to collect a just and valid debt due" to Bullhead. (Docket Entry 25 at 18.) Garcia-Contreras asserts that she "has demonstrated that no genuine issue of material fact exists

34

on the claims raised in her Complaint, such that she is entitled to judgment as a matter of law." (Docket Entry 25 at 18.) She claims that she has cited case law in support of her position and that "it is simply not possible that Plaintiff's actions . . . can be considered to have been undertaken in bad faith or for purposes of harassment." (Id. at 19.)

Garcia-Contreras's citation to court decisions and statutes is not sufficient to demonstrate the absence of bad faith. See Silvious v. Midland Credit Mgmt., Inc., No. 5:07CV145 (STAMP), 2010 U.S. Dist. LEXIS 91106, at *4-5 (N.D.W.V. Sept. 1, 2010) (unpublished). The Court nonetheless should grant summary judgment to Plaintiff on this counterclaim. The Fourth Circuit has explained that "bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." In Re: 1997 Grand Jury, 215 F.3d 430, 437 (4th Cir. 2000) (quoting United States v. Gilbert, 198 F.3d 1293, 1298-99 (11th Cir. 1999) (quoting Black's Law Dictionary 139 (6th ed. 1990))). Defendants have not identified any facts that demonstrate that Garcia-Contreras acted in bad faith in bringing the instant claims. (See Docket Entry 26.) Moreover, as explained above, material questions of fact exist as to the validity of Garcia-Contreras's second claim. Under these circumstances, the Court should grant Garcia-

35

Contreras's motion for summary judgment with respect to this counterclaim.[17]

### 3. Conclusion

Garcia-Contreras's motion for summary judgment should be granted with respect to Defendants' counterclaim that she brought her action in bad faith and for the purpose of harassing Defendants, but denied as to all other claims. A genuine issue of material fact exists as to what information was provided to Garcia-Contreras when Defendants' commenced their state court lawsuit. As a result, neither Plaintiff's cease collection activity claim, nor Defendants' counterclaim requesting a declaratory judgment can be resolved as a matter of law at this stage of the proceedings.

### D. Defendants' Motion For Summary Judgment (Docket Entry 26)

Defendants' summary judgment motion addresses Garcia-Contreras's first and second claims for relief. (Id.) In light of the disposition of Defendants' motion to dismiss, the Court need only consider the second claim. As to that matter, Defendants

---

[17] Defendants' failure to respond to the instant motion with respect to this claim also warrants summary judgment on the ground of abandonment. See Rogers v. Unitrim Auto and Home Ins. Co., 388 F. Supp. 2d 638, 641 (W.D.N.C. 2005) (ruling that plaintiffs who made no argument regarding particular claim in response to summary judgment motion were "effectively abandoning" said claim); Wainright v. Carolina Motor Club, Inc., No. 1:03CV01185, 2005 WL 1168463, at *13 (M.D.N.C. Apr. 27, 2005) (unpublished) (Sharp, M.J.) ("At the outset, the Court notes that Plaintiff failed to make any argument in her brief regarding her failure to promote claim. In the face of [Defendant's] arguments and supporting evidence in its brief in support of summary judgment, Plaintiff's failure to argue this claim is tantamount to abandonment of the claim. See Local Rule 7.3(k)."); Brand v. North Carolina Dep't of Crime Control and Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (Bullock, J.) ("In Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address . . . his hostile work environment claim. By failing to respond, Plaintiff concedes that he has not stated a hostile work environment claim.").

argue that: (i) the filing of the state court civil action is not a collection activity; (ii) even if the lawsuit constituted collection activity, they provided sufficient validation of the debt with the lawsuit; and (iii) the United States Constitution bars liability. (Docket Entry 26 at 6-13.) These arguments were addressed in the foregoing subsection regarding Garcia-Contreras's motion for summary judgment, the briefing as to which overlapped with the instant motion (<u>see</u> Docket Entries 25, 26 & 29). Therefore, for reasons previously given, Defendants' motion for summary judgment (Docket Entry 26) should be denied.

> <u>E. Consent Motion to Stay Mediation (Docket Entry 30)</u>

The parties have requested an order staying mediation until after the disposition of Garcia-Contreras's motion for summary judgment or Defendants' motion to dismiss or alternative motion for summary judgment. (Docket Entry 30 at 1.) The Court denies that motion as moot.

## IV. CONCLUSION

Garcia-Contreras's first claim (i.e., for overshadowing in violation of § 1692g(b)) is premised on the wrong statutory subsection and her "third" claim fails to state an independent cause of action. However, the Complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face[,]'" <u>Ashcroft</u>, 129 S. Ct. at 1949 (internal citations omitted) (quoting <u>Bell Atlantic Corp.</u>, 550 U.S. at 570), as to Defendants' failure to cease collection activity during the pendency of her request for verification of the debt. As to that

37

"second" claim, a genuine issue of material fact exists as to the information that Garcia-Contreras received along with the state court complaint and, for that reason, neither she nor Defendants should receive summary judgment on the cease collection claim.

For the same reason, summary judgment should not be granted with respect to Defendants' counterclaim seeking a declaratory judgment. However, given the absence of evidence that Garcia-Contreras brought her action in bad faith and for the purpose of harassing Defendants, the Court should enter summary judgment dismissing Defendants' counterclaim seeking relief on that basis. Finally, the motion to stay mediation is moot.

**IT IS THEREFORE RECOMMENDED** that Defendants' "Joint Motion to Dismiss, Answer, Affirmative Defense, and Counterclaims of Defendants" (Docket Entry 4) be **GRANTED** with respect to Garcia-Contreras's claim of overshadowing in violation of 15 U.S.C. § 1692g(b) and her claim for relief based on "deceptive, unfair and unconscionable manner and failing to comply with the FDCPA" and **DENIED** with respect to Garcia-Contreras's claim of failure to cease collection activities.

**IT IS FURTHER RECOMMENDED** that Garcia-Contreras's motion for judgment on the pleadings (Docket Entry 9) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Garcia-Contreras's motion for summary judgment (Docket Entry 25) be **GRANTED** as to Defendants' counterclaim that Garcia-Contreras brought this action in bad faith and for the purpose of harassing Defendants and **DENIED** as to all other claims.

38

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (Docket Entry 26) be **DENIED**.

**IT IS ORDERED** that the parties' Consent Motion to Stay Mediation (Docket Entry 30) is **DENIED** as moot.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 30, 2010