IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CRYSTAL GARCIA-CONTRERAS,       )
                                )
        Plaintiff,              )
                                )
     v.                         )       1:09-CV-761
                                )
BROCK & SCOTT, PLLC and         )
BULLHEAD INVESTMENTS, LLC,      )
                                )
        Defendants.             )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

    This is an action by Plaintiff Crystal Garcia-Contreras
("Garcia-Contreras") against Defendants Brock & Scott, PLLC
("Brock & Scott") and Bullhead Investments, LLC ("Bullhead")
(collectively "Defendants") alleging violations of the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  On
various cross-motions of the parties, the United States
Magistrate Judge issued a Memorandum Opinion, Order, and
Recommendation ("Recommendation") on November 30, 2010, which
recommended dismissal of some but not all claims.  (Doc. 35.)
Within the time limits prescribed by 28 U.S.C. § 636(b)(1), the
parties filed objections (Docs. 38, 39), and the matter is now
ripe for resolution.  For the reasons that follow, Defendants'
motions will be denied, and Garcia-Contreras' motion for summary
judgment on liability will be granted.

## I. BACKGROUND

The essential facts of this case are not in dispute: Brock
& Scott, representing Bullhead, mailed a letter dated April 15,
2009, to Garcia-Contreras in an effort to collect a debt she
allegedly owed.  (Doc. 1 ¶ 8; Doc. 4 at 9-10, ¶¶ 8, 12; Doc. 35
at 6.)  The letter, which Garcia-Contreras has attached to her
complaint, reads as follows:

> Re: Your CITIFINANCIAL ASSOCIATES Account, Now Owned
> By BULLHEAD INVESTMENTS, LLC
> Account number: [omitted]
> Our file number: [omitted]
> Amount Owed: $3,132.17, with interest at 0% annum
>
> April 15, 2009
> Dear: CRYSTAL G GARCIA,
>
> This law firm has been retained by the above-
> referenced creditor to file a lawsuit against you
> immediately for the collection of the debt referenced
> above.  However, you can make arrangements to satisfy
> the balance shown above by contacting our office.  If
> you do not make payment upon this debt in an amount
> acceptable to our client, we will instruct the Sheriff
> of your county to serve you with a Court-issued
> summons at your home, your work, or wherever else you
> may be found by him.  We will then apply to the Court
> for a Judgment against you, and if Judgment is
> granted, we will request that the Sheriff enforce the
> Judgment by levying an execution upon your property
> not exempt from Judgment.
>
> You may contact our office at **BROCK & SCOTT PLLC,
> Attn: Collections, at [address], or by telephone at
> either [telephone number] or [telephone number].**  We
> will assume this debt is valid unless you dispute the
> validity of all or part within 30 days of receipt of
> this letter.  If you notify us **in writing** that you
> dispute all or a portion of this debt, we will send
> you verification of the debt or a copy of the judgment
> against you.  Upon **written request** within 30 days

after receipt of this notice, we will provide you with the name and address of the original creditor if different from the creditor named above. For further information on this urgent matter, please contact our office at [telephone number] or [telephone number].

Cordially,
Philip Young

**This letter is an attempt to collect a debt, and any information obtained will be used for that purpose.**

(Doc. 1, Ex. 1 (emphases in original); <u>see</u> Doc. 4 at 9, ¶ 8; Doc. 35 at 6-7.)

On April 21, 2009, Garcia-Contreras wrote Brock & Scott to dispute the debt and request verification. (Doc. 1 ¶ 10; Doc. 1, Ex. 2; Doc. 4 at 9, ¶ 10; Doc. 35 at 7.) Instead of responding to Garcia-Contreras, on May 15, 2009, Brock & Scott filed a lawsuit against her on behalf of Bullhead in the General Court of Justice, District Court Division, for Guilford County (North Carolina) to recover the amount allegedly owed. (Doc. 1 ¶ 11; Doc. 4 at 9-10, ¶ 11; Doc. 35 at 7-8.) Attached to the state court complaint was an affidavit of a Bullhead employee in support of the alleged debt.[1] Garcia-Contreras was subsequently served with the complaint and attachment by the Guilford County Sheriff or his deputy. (<u>See</u> Doc. 26 at 2, 9-10; Doc. 29 at 6-7; Doc. 38 at 17 n.3; Doc. 38, Ex. 1; Doc. 39 at 5-6, 6 n.2.)

---

[1] Garcia-Contreras attached a copy of the state court complaint to her complaint in this action but neglected to file the attached affidavit. (Doc. 1, Ex. 3; <u>see</u> Doc. 4 at 5.) She has remedied this oversight by attaching a copy of the Bullhead employee's affidavit to her objections. (Doc. 38, Ex. 1; <u>see</u> Doc. 39 at 6 n.2.)

Garcia-Contreras commenced the present action on October 1, 2009, alleging that Defendants violated the FDCPA in one or more of the following ways: (1) "[p]articipating in collection activities which overshadowed and/or were inconsistent with Plaintiff's right to dispute the debt or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b)," (2) "[f]ailing to cease collection activities prior to providing verification of the alleged debt, where Plaintiff notified Defendants in writing within the applicable 30 day period that the debt was disputed, in violation of 15 U.S.C. § 1692g(b)," and (3) "acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA." (Doc. 1 ¶ 13.)

Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 4 at 1-7)[2] and

---

[2]  As noted by the Magistrate Judge, the parties have failed to heed the requirement in Local Rule 7.3(a) that "[a]ll motions . . . shall be accompanied by a brief" except in certain circumstances not applicable here.  Defendants' motion to dismiss (Doc. 4 at 1-7), Garcia-Contreras' motion for judgment on the pleadings (Doc. 9), and her motion for summary judgment (Doc. 25) all violate this rule. Interpreting Document 26 as a motion for summary judgment by Defendants (see infra note 4), the court finds that this motion is similarly deficient.  "A motion unaccompanied by a required brief may, in the discretion of the court, be summarily denied," Local Rule 7.3(k), and a pleading in violation of the Local Rules may be struck by the court, see Local Rule 83.4(a)(3).  After advising the parties to pay closer attention to the Local Rules, the Magistrate Judge proceeded to accept all the motions, which effectively contain the parties' "briefs" within them.  (Doc. 35 at 8 n.5.)  In the interest of efficiency, this court will do likewise, and future references to the parties' "briefs" are references to the brief-like portions of their motions.

simultaneously filed an answer[3] containing a counterclaim seeking a declaratory judgment that the conduct complained of does not violate the FDCPA (id. at 12, ¶ 21).  The counterclaim alleges that Garcia-Contreras filed her action "in bad faith and for purposes of harassing" Defendants, thereby entitling them to attorneys' fees under 15 U.S.C. § 1692k(a)(3).  (Id. at 12, ¶ 20; see id. at 12, ¶ 5.)

Garcia-Contreras answered Defendants' counterclaim (Doc. 8) and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 9).  The United States Magistrate Judge ordered that rulings on both pending motions be deferred until the time of trial or a ruling on any motion for summary judgment by any party.  (Doc. 12.)  Subsequently, each party moved for summary judgment,[4] and the motions were fully briefed. (Docs. 25, 26, 29.)

---

[3]  Because Defendants' motion to dismiss (Doc. 4 at 1-7) was filed in the same document as their answer and counterclaim (id. at 8-12), the court could analyze it as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) ("Because the Commonwealth filed its answer . . . and its motion to dismiss simultaneously, it technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings."), cert. denied, 130 S. Ct. 3318 (2010).  However, the Magistrate Judge analyzed the motion as one under Rule 12(b)(6) (see Doc. 35 at 10-11), Garcia-Contreras has not objected to this, and the result will be the same either way under the circumstances, so this court will treat the motion as a Rule 12(b)(6) motion to dismiss.

[4]  Defendants filed a document styled "Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Motion to Dismiss and/or for Summary Judgment."  (Doc. 26.)  The Magistrate Judge interpreted this document as a motion for summary judgment (see Doc. 35 at 36-37) and Garcia-Contreras has not

The Magistrate Judge's Recommendation concluded generally that (1) Garcia-Contreras' claims of "overshadowing" and "otherwise deceptive, unfair and unconscionable" conduct by Defendants should be dismissed for failure to state a claim; (2) her "failure to cease collection" claim, which is plausibly alleged, should proceed because a genuine issue of material fact remained due to the parties' failure to provide an exhibit (which they have now remedied); (3) Defendants' counterclaim that Garcia-Contreras brought this action in bad faith and for the purpose of harassing Defendants should be dismissed pursuant to Garcia-Contreras' summary judgment motion; and (4) Defendants' counterclaim for a declaratory judgment should proceed insofar as Garcia-Contreras' "failure to cease collection" claim remains unresolved. (Doc. 35 at 37-39.)

Each party raises several objections to the Magistrate Judge's Recommendation. (Docs. 38, 39.) The court will "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005).

_____

objected to this interpretation, so the court will adopt this reading of the document.

## II. ANALYSIS

### A. Overshadowing Claim

Garcia-Contreras first objects to the recommendation that her "overshadowing" claim be dismissed. (Doc. 38 at 2-11.) The Magistrate Judge concluded that this claim fails as a matter of law under subsection (b) of 15 U.S.C. § 1692g, because that subsection is limited to the thirty-day period *after* Garcia-Contreras' receipt of the April 15, 2009, letter and consequently does not cover the letter. (Doc. 35 at 12.) Garcia-Contreras, noting that the "overshadowing" prohibition is not codified elsewhere in § 1692g and concerned that the Magistrate Judge's ruling would eliminate "overshadowing" claims involving initial communications, argues that § 1692g(b) is the proper subsection under which to bring such a claim. (Doc. 38 at 3, 6, 8-11.) The first question before the court, therefore, is whether Garcia-Contreras has stated an "overshadowing" claim on this record.

### 1. Construction of 15 U.S.C. § 1692g

Section 1692g(a) provides that within five days of a debt collector's initial communication with a consumer in connection with the collection of a debt,[5] the debt collector must (unless the following information was contained in the initial

---

[5] The parties agree that Plaintiff is a "consumer" and that Defendants are "debt collectors" as defined in the FDCPA. (Doc. 1 ¶¶ 4-5; Doc. 4 at 8, ¶¶ 4-5.)

communication or the consumer has paid the debt) send the consumer written notice of the following:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). This required notice is often referred to as the "validation notice." Under § 1692g(b), "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a)" that the debt is disputed or requests the name and address of the original creditor, the debt collector

shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Id. § 1692g(b).

Courts have long interpreted § 1692g as requiring that the validation notice be "conveyed effectively to the debtor." Miller v. Payco-Gen. Am. Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991) (quoting Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988) (per curiam)). Mere inclusion of the validation notice in the debt collector's initial communication with the consumer is insufficient to satisfy § 1692g. Id. Rather, the validation notice "must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 139 (4th Cir. 1996). Moreover, "in order to be effective, 'the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication.'" Miller, 943 F.2d at 484 (quoting Swanson, 869 F.2d at 1225). This prohibition on "overshadowing" has been found to apply not only to the initial communication (where the initial communication contains the validation notice), see, e.g., id. at 483-85, but also to the debt collector's activities after the validation notice and through the end of the thirty-day period defined in § 1692g(a), see, e.g., Robinson v. Transworld Sys., Inc., 876 F. Supp. 385, 391 (N.D.N.Y. 1995).

The case law has not always been specific as to which subsection of § 1692g is the source of this implied

"overshadowing" prohibition. See, e.g., Miller, 943 F.2d at 485 (holding that a debt collector's violation of the "overshadowing" rule was a circumvention of "§ 1692g"); Talbott v. GC Servs. Ltd. P'ship, 53 F. Supp. 2d 846, 852 (W.D. Va. 1999) (discussing "overshadowing in violation of § 1692g"); Creighton v. Emporia Credit Serv., Inc., 981 F. Supp. 411, 415-16 (E.D. Va. 1997) (analyzing an "overshadowing" claim and consistently referring only to "§ 1692g"). Several courts have discussed the "overshadowing" prohibition in the context of subsection (a)'s requirement that the validation notice be provided. See, e.g., Nat'l Fin. Servs., 98 F.3d at 139; Morgan v. Credit Adjustment Bd., Inc., 999 F. Supp. 803, 806-07 (E.D. Va. 1998); cf. Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008) ("[W]e have held repeatedly that a debt collector violates § 1692g(a), even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor." (citing pre-2006 case law)).

In 2006, Congress amended the FDCPA by, among other changes, adding two sentences to the end of subsection (b) of § 1692g. See Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-07. Those new sentences read as follows:

> Collection activities and communications that do not
> otherwise violate this subchapter [i.e., the FDCPA]
> may continue during the 30-day period referred to in
> subsection (a) of this section unless the consumer has
> notified the debt collector in writing that the debt,
> or any portion of the debt, is disputed or that the
> consumer requests the name and address of the original
> creditor.  Any collection activities and communication
> during the 30-day period may not overshadow or be
> inconsistent with the disclosure of the consumer's
> right to dispute the debt or request the name and
> address of the original creditor.

15 U.S.C. § 1692g(b).  Garcia-Contreras contends that this 2006 amendment codified the existing case law on "overshadowing" and that, as a result, § 1692g(b), rather than § 1692g(a), is now the proper subsection under which to bring her claim that Defendants' initial communication (the April 15, 2009, letter) overshadowed the validation notice contained within it.  (Doc. 38 at 8-11.)

The Magistrate Judge concluded that the prohibition against "overshadowing" in § 1692g(b) does not apply to an initial communication that contains the validation notice.  In arriving at this conclusion, the Magistrate Judge relied upon amended § 1692g(b)'s express statement that its "overshadowing" prohibition applies to "[a]ny collection activities and communication during the 30-day period."  The Magistrate Judge concluded that because § 1692g(a)(3) defines "the 30-day period" as beginning "after receipt of the [validation] notice," the validation notice itself (and the initial communication bearing

it) could not be considered as occurring "during" a period that began "after receipt of the notice." Consequently, the Recommendation urges dismissal of Garcia-Contreras' "overshadowing" claim on the ground that the complaint's reference to § 1692g(b) renders the claim "premised on the wrong statutory subsection." (Doc. 35 at 37; see id. at 12.)

It is clear that the 2006 amendment did not limit a plaintiff's right to bring an "overshadowing" claim involving an initial communication containing the validation notice. See, e.g., Beasley v. Sessoms & Rogers, P.A., No. 5:09-CV-43-D, 2010 WL 1980083, at *7 (E.D.N.C. Mar. 1, 2010) (permitting an "overshadowing" claim based on an initial communication letter); McCormick v. Wells Fargo Bank, 640 F. Supp. 2d 795, 799-801 (S.D.W. Va. 2009) (analyzing an "overshadowing" claim based on an initial communication letter and dismissing it on the merits); see also Vitullo v. Mancini, 684 F. Supp. 2d 747, 757 (E.D. Va. 2010) (applying the "overshadowing" prohibition to an initial communication letter); cf. Cappetta v. GC Servs. Ltd. P'ship, No. 3:08-CV-288, 2008 WL 2964590, at *3 (E.D. Va. Aug. 1, 2008) (applying the "overshadowing" prohibition to an initial communication phone call).

Since the 2006 amendment to § 1692g(b), however, courts have reached differing opinions as to whether such claims involving initial communications now fall under the new language

in § 1692g(b), continue to fall implicitly under § 1692g(a), or both. A few courts have expressly held that amended § 1692g(b) covers an initial communication containing the validation notice. See, e.g., Jacobson, 516 F.3d at 90-91 (discussing past case law supporting the application of the "overshadowing" prohibition to an initial communication letter and stating that "Congress has now codified our approach by adding" the new § 1692g(b) language); id. at 91 n.6 ("[T]he new text confirms, rather than alters, the law of this [Second] Circuit."); Owens v. Hellmuth & Johnson, PLLC, 550 F. Supp. 2d 1060, 1064 (D. Minn. 2008) ("[A] debt collector violates the FDCPA even if it includes an accurate validation notice in a dunning letter, if the notice is 'overshadowed' or contradicted by other language in the letter." (citing 15 U.S.C. § 1692g(b))); id. at 1064 n.2 (noting that "courts had grafted such a requirement onto the [FDCPA]" but that "Congress adopted this judicial gloss when it amended the FDCPA [in 2006]").

In contrast, some courts still appear to construe a claim like Garcia-Contreras' as falling under § 1692g(a). See, e.g., Beasley, 2010 WL 1980083, at *7 (referring to "plaintiff's overshadowing-contradiction claim under section 1692g(a)" and permitting the claim to proceed). Other courts, however, simply refer to "overshadowing" as a violation of "§ 1692g." See, e.g., Elliott v. Credit Control Servs., Inc., No. 09-CV-2649-DMS

13

(BLM), 2010 WL 1495402, at *2-*4 (S.D. Cal. Apr. 14, 2010)
(analyzing an "overshadowing" claim based on an initial
communication letter while referring only to "§ 1692g" and
making no explicit mention of subsections (a) or (b));
McCormick, 640 F. Supp. 2d at 801 (referring to "a section 1692g
contradiction/overshadowing violation" and concluding that the
"dunning letter did not violate 15 U.S.C. § 1692g because it did
not contradict or overshadow the section 1692g(a) validation
rights").

Garcia-Contreras, apparently relying on the premise that
§ 1692g(b) is the proper subsection for her claim, argues that
the Magistrate Judge's construction of § 1692g(b) would allow a
debt collector to include "overshadowing" or contradictory
language in its initial communication with impunity. (See Doc.
38 at 6.) She thus contends that his holding would eliminate
the long-standing prohibition on "overshadowing" in an initial
communication letter. Her fears are unwarranted. Even assuming
that § 1692g(b) does not govern the initial communication,
nothing would prevent an "overshadowing" claim under § 1692g(a).
Moreover, nothing about the Magistrate Judge's conclusion is
inconsistent with pre-2006 case law on "overshadowing."

Given this extensive case law, it is not clear why Congress
would have intended to bifurcate the preexisting prohibition on
"overshadowing" into a rule governing the validation notice

letter (usually the initial communication) and a rule governing all later communications within the following thirty days and then codify only the latter in the 2006 amendment.  Indeed, initial communication letters are where the "overshadowing" prohibition has been more commonly applied.[6]  <u>See generally</u> <u>Abuelhawa v. United States</u>, 129 S. Ct. 2102, 2106 (2009) ("[W]e presume legislatures act with case law in mind . . . .").

Garcia-Contreras argues that the plain language of the statute does not require the Magistrate Judge's reading. Rather, she contends, a construction in favor of the consumer to further the FDCPA's remedial goals indicates that the 2006 amendment to § 1692g(b) applies to the validation notice.  <u>Cf.,</u> <u>e.g.</u>, <u>Johnson v. Riddle</u>, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."); <u>Akalwadi v.</u> <u>Risk Mgmt. Alts., Inc.</u>, 336 F. Supp. 2d 492, 503 (D. Md. 2004) ("To effectuate the FDCPA's remedial purpose, most courts

---

[6]  The relevant subsection of the 2006 act is captioned "ESTABLISHMENT OF RIGHT TO COLLECT WITHIN THE FIRST 30 DAYS," § 802(c), 120 Stat. at 2006-07, indicating that the primary purpose of the amendment was to confirm that a debt collector may continue engaging in collection activities and communications during the thirty days after the consumer receives the validation notice.  In this context, the final sentence of amended § 1692g(b) reads as something of a caveat — a proviso that this continued collection activity may not overshadow or be inconsistent with the consumer's validation rights.  This analysis, however, does not necessarily resolve the question whether this proviso was intended to apply to the event — the validation notice letter — that initiates the thirty-day period.

interpret the bona fide error defense narrowly."); Plummer v. Gordon, 193 F. Supp. 2d 460, 463 (D. Conn. 2002) ("The FDCPA is remedial in nature and should be liberally construed."). She points out that the thirty-day period prescribed in § 1692g is defined as beginning "after *receipt* of the [validation] notice," § 1692g(a)(3) (emphasis added), not after the initial communication. (See Doc. 38 at 3.) In this case, she argues, because the validation notice was contained in Defendants' initial communication to her, the thirty-day period began after her receipt of the April 15, 2009, letter. Under her analysis, because she could not have *read* the letter until after she *received* it, the "overshadowing" language was communicated to her "after receipt of the notice" and thus constituted a "communication during the 30-day period" under § 1692g(b). (See id. at 5-6.)

Ultimately, the court need not resolve any dispute over the scope of § 1692g(b). Throughout this case Defendants have never argued that the "overshadowing" prohibition did not apply to their initial communication or that Garcia-Contreras failed to allege an "overshadowing" claim under § 1692g. Rather, Defendants have assumed that she properly brought her claim and have argued only that it fails on the merits because the initial communication did not "overshadow" the statutorily required notice. (See Doc. 4 at 2-5; Doc. 26 at 3-6.) Indeed, the

parties fully briefed the merits of Garcia-Contreras'
"overshadowing" claim before the Magistrate Judge (see Doc. 4 at
2-5; Doc. 9 at 7-17; Doc. 25 at 7-15; Doc. 26 at 3-6; Doc. 29 at
2-4) and at a December 9, 2010, hearing expressed genuine
surprise to this court that the Magistrate Judge had limited
Garcia-Contreras' claim on a ground that Defendants never
raised.

The complaint clearly charges that Defendants violated the
"overshadowing" prohibition and also alleges generally that
Defendants violated the FDCPA, including by "acting in an
otherwise deceptive, unfair and unconscionable manner and
failing to comply with the FDCPA." (Doc. 1 ¶ 13.) The court
finds no prejudice to Defendants in construing the complaint —
as did the parties — to properly raise an "overshadowing" claim
under § 1692g relating to Defendants' initial communication.
The court finds, therefore, that Garcia-Contreras has properly
asserted an "overshadowing" claim based upon Defendants' April
15, 2009, letter. Cf. Cappetta, 2008 WL 2964590, at *3
(permitting a represented FDCPA plaintiff to proceed with a
§ 1692g claim although her complaint did not cite that provision
explicitly, because her factual allegations constituted such a
claim and her complaint charged the debt collector with
violating the FDCPA "in multiple ways"). Under these
circumstances, the court will not dismiss Garcia-Contreras'

claim merely because her complaint also alleges that Defendants'
conduct was "in violation of 15 U.S.C. § 1692g(b)."
Consequently, the court will, as did the parties, proceed to the
merits of the claim.

## 2. Procedural Posture and Legal Standards

As noted, four motions are currently pending:
(1) Defendants' motion to dismiss (Doc. 4); (2) Garcia-
Contreras' motion for judgment on the pleadings (Doc. 9);
(3) Garcia-Contreras' motion for summary judgment (Doc. 25); and
(4) Defendants' motion for summary judgment (Doc. 26). A motion
to dismiss for failure to state a claim upon which relief can be
granted pursuant to Federal Rule of Civil Procedure 12(b)(6)
"challenges the legal sufficiency of a complaint . . .
considered with the assumption that the facts alleged are true."
Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009)
(citations omitted). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
A motion for judgment on the pleadings under Federal Rule of
Civil Procedure 12(c) may be granted "where there are no
material facts in dispute and the moving party is entitled to
judgment as a matter of law." Colin v. Marconi Commerce Sys.

Emps.' Ret. Plan, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004) (quoting Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001)). "The standard of review for a 12(b)(6) and a 12(c) motion is nearly the same . . . with the real difference being that on a 12(c) motion, the Court considers the [a]nswer as well as the [c]omplaint." Rinaldi v. CCX, Inc., No. 3:05-CV-108-RJC, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] Where the parties agree that there is no genuine dispute of material fact, the issue is a question of law for the court. See Pa. Nat'l Mut. Cas. Ins. Co. v. Triangle Paving, Inc., 973 F. Supp. 560, 562 (E.D.N.C. 1996) ("[B]oth parties agree that there are no genuine issues of material fact and, thus, summary judgment is appropriate."), aff'd, 121 F.3d 699 (4th Cir. 1997) (per curiam) (unpublished table decision).

Here, the parties agree that no genuine dispute exists as to any fact material to Garcia-Contreras' "overshadowing" claim. Thus, the sole question is whether Defendants' April 15, 2009,

---

[7] Federal Rule of Civil Procedure 56 was revised effective December 1, 2010, but "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 amendments).

letter violates the "overshadowing" prohibition, and this question is treated as one of law in this circuit. <u>See McCormick</u>, 640 F. Supp. 2d at 798-99. The court's ruling on this issue will resolve all four pending motions as to the "overshadowing" claim.

### 3. Analysis of the April 15, 2009, Letter

In analyzing Defendants' April 15, 2009, collection letter, the court must apply the "least sophisticated consumer" standard. <u>See Nat'l Fin. Servs.</u>, 98 F.3d at 135-36, 138-39 (adopting this standard in the context of 15 U.S.C. § 1692e); <u>Talbott</u>, 53 F. Supp. 2d at 850 ("To analyze the existence of a FDCPA violation, the Fourth Circuit has adopted a 'least sophisticated consumer' standard."); <u>Creighton</u>, 981 F. Supp. at 415-16 (applying this standard to a § 1692g claim). The purpose of this standard is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." <u>Nat'l Fin. Servs.</u>, 98 F.3d at 136 (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993)). The least sophisticated consumer "isn't a dimwit," <u>Wahl v. Midland Credit Mgmt., Inc.</u>, 556 F.3d 643, 645 (7th Cir. 2009) (applying the similar "unsophisticated consumer" standard), or "tied to the very last rung on the [intelligence or] sophistication ladder," <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009) (alteration in original) (quoting <u>Goswami v. Am. Collections Enter., Inc.</u>, 377 F.3d 488, 495 (5th

Cir. 2004)), cert. denied, 130 S. Ct. 1505 (2010). Thus,
"[w]hile protecting naive consumers, the standard also prevents
liability for bizarre or idiosyncratic interpretations of
collection notices by preserving a quotient of reasonableness
and presuming a basic level of understanding and willingness to
read with care." Nat'l Fin. Servs., 98 F.3d at 136. "Under
[this] objective standard, a debt collector violates the FDCPA
if [its] communication would mislead or confuse the 'least
sophisticated debtor' as to her rights or obligations under the
FDCPA." Beasley, 2010 WL 1980083, at *3; see also Talbott, 53
F. Supp. 2d at 852 (holding, in the context of an
"overshadowing" claim based on an initial communication letter
containing the validation notice, that the court must "decide
whether the least sophisticated consumer would find the language
contradictory or inconsistent so as to leave him confused about
his right to dispute the debt"). Thus, because the test is
objective, whether Garcia-Contreras was in fact misled is
irrelevant.

Defendants point out that their letter contains the
required notices listed in § 1692g(a)(1)-(5), and Garcia-
Contreras does not contest this. Indeed, the language of the
second paragraph of Defendants' letter tracks closely the
statutory language in § 1692g(a)(3)-(5). (See Doc. 1, Ex. 1.)
Garcia-Contreras argues, however, that the first paragraph of

the letter overshadows and conflicts with the subsequent notice of her rights under the FDCPA. She contends that the least sophisticated consumer would be induced to overlook or waive her validation rights by the letter's statements that Brock & Scott was retained "to file a lawsuit against you immediately for the collection of the debt," that "you can make arrangements to satisfy the balance . . . by contacting [Brock & Scott's] office," that "[i]f you do not make payment upon this debt in an amount acceptable to our client, we will instruct the Sheriff . . . to serve you with a Court-issued summons at your home, your work, or wherever else you may be found by him," that Brock & Scott would then apply to a court for a judgment against the consumer, and that "if Judgment is granted, we will request that the Sheriff enforce the Judgment by levying an execution upon your property not exempt from Judgment." (Id.) Plaintiff argues that the least sophisticated consumer "could be led to the conclusion that she must ignore her right to take 30 days to verify the alleged debt and act immediately or she could subject herself to a lawsuit," judgment, and execution against her property. (Doc. 25 at 10; see Doc. 9 at 9-10; Doc. 25 at 9.)

Defendants first respond by contrasting their letter with the collection letter described in Miller, a leading Fourth Circuit opinion on the "overshadowing" prohibition. The front of the Miller letter demanded "IMMEDIATE FULL PAYMENT" in large,

red, boldface type and commanded the consumer to "PHONE US TODAY," "emphasized by the word 'NOW' emblazoned in white letters nearly two inches tall against a red background." 943 F.2d at 483-84. At the bottom of the page, in very small type, the letter instructed the consumer to "SEE REVERSE SIDE FOR IMPORTANT INFORMATION," and the reverse side contained the required validation notice printed in gray ink. Id. at 483. The Fourth Circuit held that "[t]he manner of [the debt collector's] presentation plainly undercuts and overshadows the message of the validation notice. Screaming headlines, bright colors and huge lettering all point to a deliberate policy on the part of the collector to evade the spirit of the notice statute, and mislead the debtor into disregarding the notice." Id. at 484 (internal quotation marks omitted).

Defendants argue that the tenor of their letter is far different, noting that it lacks the "[s]creaming headlines, bright colors and huge lettering" of the Miller letter. Rather, they contend, it is printed entirely in the same standard, nonthreatening font (with the exception of the "letterhead" elements), and the only text elements in bold print are Brock & Scott's contact information, the statement that "This letter is an attempt to collect a debt," and two warnings that Garcia-Contreras' exercise of her validation rights must be in writing. (See Doc. 1, Ex. 1.) To this extent, Defendants are correct

that their letter, by comparison, is less overtly threatening than the letter in Miller. However, the *substance* of Defendants' letter must be examined as well. Cf. Morgan, 999 F. Supp. at 806-07 (distinguishing between "format overshadowing" and substantive overshadowing).

In Miller, the court held that the collection letter's "emphasis on immediate action . . . stands in contradiction to the FDCPA, which provides consumers a thirty day period to decide to request validation. A consumer who received [the debt collector's] form could easily be confused between the commands to respond 'immediately,' 'now,' and 'today,' and the thirty day response time contemplated by the statute." 943 F.2d at 484. District courts in this circuit have echoed this holding. See, e.g., Talbott, 53 F. Supp. 2d at 852 ("[C]ourts have been quick to find overshadowing in violation of § 1692g where a demand letter requested 'immediate payment' or payment by any deadline falling before the expiration of the thirty days allowed by the validation notice for disputing the debt."); Morgan, 999 F. Supp. at 807 ("A demand for payment or action by the consumer within a time less than the disclosed thirty-day validation period contradicts § 1692g(a) and thus violates the Act."); Creighton, 981 F. Supp. at 415-16 (finding a violation of § 1692g where the collection letter demanded payment "UPON RECEIPT OF THIS NOTICE" and stated that "FAILURE . . . TO PAY IN

FULL WHEN NOTIFIED WILL BE JUST CAUSE TO PLACE THIS ITEM ON YOUR
CREDIT RECORD").

Defendants emphasize that nothing in their April 15, 2009,
letter expressly demands payment within thirty days.  While the
typical violation involves a letter that contains both such an
express demand and notice of the consumer's right to request
verification within thirty days, see, e.g., Miller, 943 F.2d at
483-84; Creighton, 981 F. Supp. at 413, 415, "[t]here are
numerous and ingenious ways of circumventing § 1692g under a
cover of a technical compliance," Miller, 943 F.2d at 485.
Here, while Defendants' letter carefully avoids using the phrase
"immediately" to expressly modify "payment," the court finds
that the letter's threats can reasonably be interpreted by the
least sophisticated consumer as a demand for immediate payment.

The letter does more than simply inform the consumer of the
potential for litigation.  It threatens "immediate[]" litigation
and warns that failure to "make payment upon this debt in an
amount acceptable" to Bullhead will result in the sheriff
tracking down the consumer "at [her] home, [her] work, or
wherever else [she] may be found by him" to serve her with the
lawsuit and take away her nonexempt property.  To reinforce the
need for immediate action by the consumer, the letter, after the
statutory validation notice, characterizes the matter as
"urgent."  Taken as a whole, the letter implies strongly that in

order to ward off the "immediate[]" legal action and sheriff's execution, the consumer must pay Bullhead right away. While a sophisticated (or perhaps even average) consumer might understand that litigation may require thirty days or more before a judgment may issue and an execution can occur, the least sophisticated consumer would not. Moreover, nothing in the letter advises the consumer that the debt collector could not (or would not) obtain a judgment and execute on the consumer's property within the 30-day statutory period. Consequently, the least sophisticated consumer could reasonably believe that she is facing the threat of an "immediate[]" levy on her property and should forego the exercise of any validation rights under the FDCPA and arrange to make payment immediately. Because the letter lacks any explanation of how the threats pressuring the consumer for immediate payment are consistent with the validation notice, the threats overshadow and contradict the notice, which therefore has not been effectively conveyed. Cf. Dunn v. Derrick E. McGavic, P.C., 653 F. Supp. 2d 1109, 1111-14 (D. Or. 2009) (finding an "overshadowing" violation where the initial collection letter stated that "[i]f our client instructs us to file suit immediately, we may do so even if the thirty (30) day dispute and validation periods described below have not expired" but did not clearly explain how this threat was consistent with the validation notice);

Johnson v. Equifax Risk Mgmt. Servs., No. 00 Civ. 7836, 2004 WL
540459, at *1 n.4, *5 (S.D.N.Y. Mar. 17, 2004) (finding an
"overshadowing" violation where the collection letter stated
that the consumer's unpaid check had been "recorded in Equifax
Check Services['] negative file" and "[p]ayment of your balance
will restore your check writing privileges," because "the threat
here is quite palpable" and "the failure to clarify whether the
consumer could restore his check writing privileges by any other
means than payment would confuse the reasonable least
sophisticated consumer" (first alteration in original));[8]
Desantis v. Roz-Ber, Inc., 51 F. Supp. 2d 244, 250-51 (E.D.N.Y.
1999) (finding an "overshadowing" violation where the collection
letter demanded "IMMEDIATE ATTENTION" and indicated that to
receive the debt collector's "cooperation," the consumer must
remit payment or otherwise arrange settlement, and stating that
the debt collector "has cleverly attempted to push the
boundaries of a lawful collection letter, by using implicit,
rather than explicit threats, by couching what is in essence a
demand for immediate payment, with language that the defendant
argues does not overshadow the debtor's rights").

---

[8]     Johnson also noted that "[a]lthough the letter did not say
'immediate payment,' it clearly implied that a timely response was
important by suggesting that the consumer wire the money or send it by
overnight mail."  2004 WL 540459, at *5 n.20.

Defendants argue that the FDCPA does not establish a thirty-day "grace period," that they were free to sue Garcia-Contreras immediately after sending the April 15, 2009, letter, and that the letter truthfully informed her of this. (Doc. 26 at 4-6.) They point to Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997), which held that "[t]he debt collector is perfectly free to sue within thirty days." Id. at 501.

Defendants are correct that they were free to sue Garcia-Contreras within the statutory thirty-day period. This principle was reinforced by the 2006 amendment to § 1692g(b), which states in part that "[c]ollection activities and communications that do not otherwise violate [the FDCPA] may continue during the 30-day period" unless the consumer has exercised her validation rights. However, Defendants fail to acknowledge Bartlett's ultimate holding: that the collection letter at issue, which contained a threat of legal action unless within one week the consumer either made a down payment or contacted the creditor to "make suitable arrangements for payment," 128 F.3d at 503, violated § 1692g:

> On the one hand, [the Bartlett debt collector's] letter tells the debtor that if he doesn't pay within a week he's going to be sued. On the other hand, it tells him that he can contest the debt within thirty days. . . . The net effect of the juxtaposition of the one-week and thirty-day crucial periods is to turn the required disclosure into legal gibberish. That's as bad as an outright contradiction.

Id. at 501.  Bartlett makes clear that although a debt collector

has the right to sue a consumer during the statutory thirty-day

period, it must tread carefully when leveraging this right in

the initial collection letter to extract payment so as not to

overshadow or contradict the consumer's validation rights.  See

id. at 501-02 (offering a "safe harbor" letter demonstrating how

a debt collector may warn of its right to bring suit without

violating § 1692g); cf. Ellis v. Solomon & Solomon, P.C., 591

F.3d 130, 136 (2d Cir. 2010) (holding that "the validation

notice is overshadowed where a debt collector serves a consumer

with process initiating a lawsuit during the validation period,

without clarifying that commencement of the lawsuit has no

effect on the information conveyed in the validation notice"),

cert. denied, 130 S. Ct. 3333 (2010).

Defendants also compare their letter to that in McCormick,

which satisfied § 1692g.  640 F. Supp. 2d at 799-801.  In

McCormick, the initial collection letter included the required

validation notice and then stated, "**PLEASE BE ADVISED THAT

DURING THE THIRTY (30) DAY PERIOD, THIS FIRM WILL NOT DELAY OR

CEASE WITH ITS COLLECTION OF THE DEBT**." Id. at 797 (emphasis in

original).  The court held that this sentence merely restated

the rights of the debt collector as contained in § 1692g.  Id.

at 799.  The court found "nothing else in the letter that raises

red flags, such as formatting issues obscuring the statement of

validation rights or words contradicting the validation rights."
Id. at 800.  In particular, the court noted "the absence of any
demand for immediate payment."  Id.  Insofar as this court has
already found that the least sophisticated consumer reasonably
could read Defendants' letter as demanding immediate payment,
unlike the McCormick letter, McCormick is distinguishable.

Defendants point to two additional decisions from other
circuits, but each is distinguishable.  In Peter v. GC Servs.
L.P., 310 F.3d 344 (5th Cir. 2002), the collection letter stated
that "FULL COLLECTION ACTIVITY WILL CONTINUE UNTIL THIS ACCOUNT
IS PAID IN FULL," that "THE DEPARTMENT [of Education] WILL
CHARGE YOU FOR THE EXPENSES INCURRED TO COLLECT THIS ACCOUNT,"
and that "TO AVOID FURTHER COLLECTION ACTIVITY, YOUR STUDENT
LOAN MUST BE PAID IN FULL."  Id. at 347.  However, the court
held that "[b]ecause the challenged language here did not demand
payment in a specific time period shorter than 30 days," the
letter did not violate § 1692g.  Id. at 350.  The court
contrasted the letter with collection letters containing
"[d]emands for 'immediate payment' or payment 'now'" and
indicated that these letters would violate § 1692g, "at least
where [the demands'] relationship to the 30-day window is not
explained."  Id. at 349.  Here, Defendants' letter contains a
heavy-handed demand effectively for immediate payment with no

explanation of its relationship to Garcia-Contreras' validation rights, distinguishing this letter from the letter in Peter.[9]

In Terran v. Kaplan, 109 F.3d 1428 (9th Cir. 1997), the collection letter stated that "[u]nless an immediate telephone call is made to J SCOTT, a collection assistant of our office at [telephone number], we may find it necessary to recommend to our client that they proceed with legal action." Id. at 1430. The letter then provided the required validation notice. Id. The court held that the quoted language did not overshadow or contradict the validation notice, finding "particularly significant that the challenged language in this matter does not require *payment* 'immediately.'" Id. at 1434 (emphasis in original). The court stated that "[a] demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences." Id. But the court held that the language at issue "simply encourages the debtor to communicate with the debt collection agency. It does not threaten or encourage the least sophisticated debtor to

_____

[9]  The letter in Peter also stated that "THE DEMANDS FOR PAYMENT IN THIS LETTER DO NOT REDUCE YOUR RIGHTS TO DISPUTE THIS DEBT." 310 F.3d at 347. Although the court did not base its holding upon this statement, the statement provided additional clarification of the relationship between the consumer's rights and the debt collector's demands. Such clarification is lacking in Defendants' letter.

waive his statutory right to challenge the validity of the debt."[10]  Id.

In the present case, Defendants' letter demands not only that Garcia-Contreras contact Brock & Scott's office, but also that she "make arrangements to satisfy the balance" and "make payment . . . in an amount acceptable to our client." (Doc. 1, Ex. 1.)  This must be done quickly to preempt Defendants' "immediate[]" lawsuit and resulting sheriff's execution against her property — a matter described by Defendants as "urgent." (See id.)  Such language, without further clarification, overshadows and contradicts the notice of the consumer's statutory validation rights and therefore violates the requirement in § 1692g that the validation notice be "conveyed effectively to the debtor."  Miller, 943 F.2d at 484 (quoting Swanson, 869 F.2d at 1225).

---

[10]  The court in Morgan v. Credit Adjustment Board, Inc., 999 F. Supp. 803 (E.D. Va. 1998), went farther than the Terran court, holding that any demand for immediate action, not only immediate payment, violates § 1692g, particularly when "combined with the threat of immediate adverse action."  Id. at 807.  The collection letter at issue stated: "An important matter demanding your immediate attention has been reported to this office.  You should contact this office not later than June 20, 1996 [seven days after the letter was mailed] to conclude this matter."  Id. at 804 (emphasis in original).  The court found that this language "could very likely confuse the least sophisticated debtor, who could reasonable [sic] interpret the notice as a demand for immediate payment or immediate action."  Id. at 807. Because of this language, combined with the letter's instruction that "[t]o stop further action, pay your account in full to this office," the letter violated § 1692g.  Id.

Consequently, Defendants' Rule 12(b)(6) motion to dismiss will be denied as to Garcia-Contreras' "overshadowing" claim. Because the court's holding is based upon its analysis of Defendants' letter, which is attached to the complaint, this claim could be disposed of by granting Garcia-Contreras' Rule 12(c) motion for judgment on the pleadings. However, because the result will be the same, the court will deny her Rule 12(c) motion as moot, grant her motion for summary judgment as to this claim, and deny Defendants' cross-motion for summary judgment.[11]

**B.   Failure to Cease Collection**

The parties' remaining objections all involve Garcia-Contreras' "failure to cease collection" claim under § 1692g(b). Pertinent to this inquiry, the parties agree that on April 21, 2009, in response to Defendants' April 15, 2009, letter, Garcia-Contreras sent a letter to Brock & Scott disputing the debt and requesting verification. (Doc. 1 ¶ 10; Doc. 4 at 9, ¶ 10.) On May 15, 2009, Brock & Scott, without previously mailing Garcia-Contreras a response, filed a lawsuit against her on behalf of Bullhead in state court to recover the amount she allegedly owed. (Doc. 1 ¶ 11; Doc. 25, Ex. 2 (answers 8-9); Doc. 25, Ex.

---

[11]   Garcia-Contreras argues that Bullhead is vicariously liable for violations of the FDCPA by Brock & Scott (Doc. 25 at 17-18), and Defendants have not contested this at any point. Therefore, summary judgment will be entered against both Defendants.

3 (answers 8-9).)  Garcia-Contreras claims that this violated § 1692g(b)'s requirement that

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).  The Magistrate Judge concluded that the success of the claim may depend on the manner in which Garcia-Contreras was served in the state court action and whether the attachment to Defendants' state court complaint satisfied the verification requirement in § 1692g(b).  Because the manner of service was not clear on the record and the attachment had not been submitted by the parties,[12] the Magistrate Judge held that the claim could not be disposed of as a matter of law and that all four pending motions should be denied.  (Doc. 35 at 15-16, 20-21, 33-34, 37.)  Plaintiff and Defendants object to this conclusion.  Each objection will be examined in turn.

---

[12]  As noted, the parties have since remedied the absence of the attachment.

### 1.  Lawsuit as Collection Activity

Defendants argue that their Rule 12(b)(6) motion to dismiss should be granted because the filing and prosecution of a lawsuit is not "collection activity" and thus Defendants did not fail to "cease collection of the debt" in violation of § 1692g(b).  The Magistrate Judge rejected this argument (Doc. 35 at 13-15, 23-24), but Defendants contend that the Recommendation misinterprets the FDCPA and applicable case law (Doc. 39 at 2-5).

First, Defendants argue that the Magistrate Judge misread Heintz v. Jenkins, 514 U.S. 291 (1995), and Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997).  The court has considered Defendants' arguments and rejects Defendants' attempts to explain away these two opinions.

In Heintz, the Supreme Court unanimously held that "the term 'debt collector' in the [FDCPA] . . . applies to a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts."  514 U.S. at 292 (emphasis in original).  Defendants point out that the specific issue in Heintz was whether the FDCPA applied to a bank lawyer's letter sent to a consumer's lawyer in an effort to settle the bank's lawsuit against the consumer to recover a debt.  See id. at 293-94.  Defendants argue that the Court's holding — that the FDCPA applied to the letter — should be construed narrowly and that any language by

the Court equating "litigation" with "debt collection" should be dismissed as dicta. This is difficult to square with the Court's explanation of its holding. See, e.g., id. at 294 ("The [district] court held that the Act does not apply to lawyers engaging in litigation. . . . [The Seventh Circuit] reversed the [d]istrict [c]ourt's judgment, interpreting the Act to apply to litigating lawyers. . . . [W]e conclude that the Seventh Circuit is correct. The Act does apply to lawyers engaged in litigation."); id. ("There are two rather strong reasons for believing that the Act applies to the litigating activities of lawyers."); id. ("In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."); id. at 295 (noting the defendant lawyer's argument that the FDCPA contains "an implied exemption for those debt-collecting activities of lawyers that consist of litigating" prior to rejecting this argument); id. at 295-97 (rejecting the defendant's argument that the FDCPA's requirements, "if applied directly to litigating activities," would create "harmfully anomalous results"); id. at 299 (concluding that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"). Defendants' apparent position that the FDCPA applies to litigating lawyers but not to

their litigating activities is thus unpersuasive.  Nor is this
court persuaded that Heintz's equation of "litigation" to "debt
collection" can plausibly be considered dicta.  Moreover,
Defendants' interpretation of Heintz is not supported by any
case law.

Defendants' interpretation of Bartlett is even more
untenable.  The Recommendation noted Bartlett's statement that
"[t]he debt collector is perfectly free to sue within thirty
days [of the consumer's receipt of the validation notice]; he
just must cease his efforts at collection during the interval
between being asked for verification of the debt and mailing the
verification to the debtor."  128 F.3d at 501 (citing 15 U.S.C.
§ 1692g(b)).  The Magistrate Judge held that this statement
"equated a lawsuit to collection efforts."  (Doc. 35 at 14.)
Defendants now assert that the statement actually *distinguishes*
between litigation and collection activity, because the Seventh
Circuit used the word "sue" in the first part of the sentence
and the phrase "efforts at collection" in the second part.  This
is a very strained reading.  Moreover, Defendants' position is
clearly incompatible with the "safe harbor" collection letter
that Bartlett provided for debt collectors, which reads in part:

> The law does not require me to wait until the end of
> the thirty-day period before suing you to collect this
> debt.  If, however, you request proof of the debt or
> the name and address of the original creditor within
> the thirty-day period that begins with your receipt of

this letter, *the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt* until I mail the requested information to you.

128 F.3d at 502 (emphasis added).

The only other authority Defendants have provided to support their contention that litigation is not debt collection is <u>Green v. Hocking</u>, 9 F.3d 18 (6th Cir. 1993) (per curiam), which was abrogated by <u>Heintz</u>, <u>see</u> 514 U.S. at 294.

On the other hand, Garcia-Contreras points to several decisions recognizing litigation as collection activity covered by § 1692g(b). <u>See, e.g.</u>, <u>Lietz v. Mikel M. Boley Att'y at Law</u>, No. 2:05-CV-523-JTG, 2006 WL 335854, at *2 (D. Utah Feb. 14, 2006) ("Due to the alleged fact that verification was never provided to plaintiff, under § 1692g(b) the debt collector should have ceased collection of the debt [until the verification requirement was satisfied]. Instead, after the debt collection process had already begun, defendant filed the pending complaint and summons in state court rather than providing the requisite verification of debt to plaintiff."); <u>Anderson v. Frederick J. Hanna & Assocs.</u>, 361 F. Supp. 2d 1379, 1383 (N.D. Ga. 2005) ("[D]efendants' argument that a lawsuit to collect a debt is not 'collection activity' is patently frivolous.").

Defendants also argue that the Recommendation misreads the FDCPA itself. They point to 15 U.S.C. §§ 1692d and 1692f, which

contain nonexclusive lists of debt collection activities that constitute "harassment or abuse" and "unfair practices," respectively, and they point out that these lists do not explicitly mention litigation or "the invocation of any judicial remedy." (Doc. 39 at 4.) Defendants assert that the only FDCPA provisions addressing litigation by debt collectors are 15 U.S.C. §§ 1692e(15) and 1692i, which Defendants contend should not be read to identify litigation with collection activity. Defendants' argument misses the point. The fact that litigation is not mentioned in the FDCPA's *nonexclusive* lists of activities constituting "harassment or abuse" and "unfair practices" has no bearing on whether a lawsuit is a collection activity, which it plainly is under existing case law. Nor does it answer whether pursuing litigation before responding to a verification request violates § 1692g(b).

The court has considered all of Defendants' arguments and finds no basis for rejecting the Magistrate Judge's conclusion that Defendants' commencement of litigation constituted "collection of the debt" under § 1692g(b). Therefore, this portion of the Magistrate Judge's Recommendation is adopted.

### 2.    Lawsuit as Verification

Defendants' and Garcia-Contreras' second objections are closely related and ultimately turn on the same legal questions. Because the parties rely in part upon facts that became clearly

undisputed only after discovery,[13] the court will analyze the "failure to cease collection" claim in the context of the parties' motions for summary judgment.[14]  The parties agree that after Defendants received Garcia-Contreras' April 21, 2009, letter requesting verification of the alleged debt, they provided no response prior to May 15, 2009.  (Doc. 25, Ex. 2 (answers 6-8); Doc. 25, Ex. 3 (answers 6-8).)  On that date, Defendants filed their state court lawsuit against Garcia-Contreras.  (Doc. 25, Ex. 2 (answer 9); Doc. 25, Ex. 3 (answer 9); Doc. 25, Ex. 5.)  The state court complaint and its accompanying affidavit were subsequently served upon Garcia-Contreras, apparently by the Guilford County Sheriff or his deputy.[15]  (See Doc. 4 at 5; Doc. 26 at 2, 9-10; Doc. 29 at 6-7; Doc. 38 at 11-12; Doc. 39 at 5.)

---

[13]  For example, Garcia-Contreras' objections to the Recommendation state that "Defendants . . . do not dispute that they failed to provide Plaintiff with any verification of the alleged debt prior to filing the state court lawsuit against her on May 15, 2009."  (Doc. 38 at 13.)  Defendants' answer leaves unclear whether or not Defendants dispute this point (see Doc. 4 at 9, ¶ 11), but their responses to Garcia-Contreras' requests for admission demonstrate that there is no genuine dispute concerning this fact (see Doc. 25, Ex. 2 (answer 8); Doc. 25, Ex. 3 (answer 8)).

[14]  Consequently, the court will deny Defendants' Rule 12(b)(6) motion to dismiss and Garcia-Contreras' Rule 12(c) motion for judgment on the pleadings as to the "failure to cease collection" claim, as recommended by the Magistrate Judge.

[15]  Neither party has submitted evidence concerning the service of the state court complaint upon Garcia-Contreras, nor do any party's pleadings discuss this service.  However, the parties' briefs rely upon the fact that after Defendants filed their state court action, Garcia-Contreras was served with the state court complaint and its

Defendants contend that even if the filing and prosecution of a civil action constitutes "collection of the debt" under § 1692g(b), Defendants' state court complaint satisfied that provision's verification requirement, regardless of any attachments to it. (Doc. 39 at 5-6.) Defendants argue that the state court complaint complied with the definition of "verification" provided in Chaudhry v. Gallerizzo, 174 F.3d 394 (4th Cir. 1999): "[V]erification of a debt [under § 1692g(b)] involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." Id. at 406; see also id. ("There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt."). The Magistrate Judge

---

accompanying affidavit, and the parties' arguments are incomprehensible without this fact. Moreover, at the December 9, 2010, hearing, the parties' attorneys expressed the view that no factual issues remained in the case. The North Carolina Rules of Civil Procedure also demonstrate that the service upon Garcia-Contreras must have occurred after Defendants filed their complaint with the state court. See N.C. R. Civ. P. 3(a), 4(a). Therefore, the court finds no genuine dispute over the fact that Garcia-Contreras was served with the state court complaint and its accompanying affidavit subsequent to Defendants' filing of their complaint with the state court.

As to the manner of service, Defendants assert in one brief that Garcia-Contreras was served by the Guilford County Sheriff, "acting through his lawful deputy" (Doc. 26 at 9; see id. at 2), and Garcia-Contreras does not contest this (see Doc. 29 at 6-7). This is consistent with the parties' indications that service was accomplished through personal delivery. (See, e.g., Doc. 4 at 5 (referring to "the delivery of the complaint . . . to the Plaintiff").) Because the court's resolution of this claim rests ultimately upon the timing, not the manner, of service, the manner of service is not dispositive.

concluded that the state court complaint alone could not satisfy the verification requirement but that the attachment to it, depending upon its contents, might do so. (Doc. 35 at 25-26.) Defendants object and argue that the state court complaint alone suffices.

Garcia-Contreras argues that the contents of Defendants' state court complaint and its attachment are both irrelevant, because Defendants did not "mail" her any verification of the alleged debt prior to commencing the lawsuit in state court. (Doc. 38 at 11-19.) She relies upon § 1692g(b)'s command that after the consumer has disputed the debt, the debt collector

> shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

§ 1692g(b) (emphases added). Thus, she contends, both the manner and timing of the purported verification violated § 1692g(b).

As to the manner of verification, Garcia-Contreras points to those courts that have construed narrowly § 1692g(b)'s requirement that verification be "mailed." See, e.g., Recker v. Cent. Collection Bureau, Inc., No. 1:04-CV-2037-WTL-DFH, 2005 WL 2654222, at *3 (S.D. Ind. Oct. 17, 2005) (Lawrence, Mag. J.) ("[T]he statute requires that the verification be mailed to the

consumer; the statute does not allow the verification to instead be attached to a lawsuit."); see also Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 593 (D. Md. 1999) (finding a violation of § 1692g(b) because, among other reasons, the debt collector faxed, rather than mailed, the verification).

As to the timing of verification, Garcia-Contreras contends that Defendants' "collection of the debt" commenced when they filed their complaint in state court, an event that occurred before she was served. (See Doc. 29 at 6-7; Doc. 41 at 6.) Defendants respond that "[t]he service of that summons and [c]omplaint is necessarily the first step in the prosecution of the civil action" (Doc. 26 at 9-10),[16] and they state that "Plaintiff simply cannot contend that the service of the summons and complaint in the state court action took place prior to the Defendants' having sent validation to her, since the summons and complaint are themselves the validation to which she is entitled" (id. at 10).

The court agrees with Garcia-Contreras that, irrespective of the contents of the complaint or its attachment, Defendants

---

[16] To the extent Defendants' position relies upon the assumption that only communications with the consumer can constitute "collection of the debt," they have not provided any authority to support it and it is contrary to case law. Cf., e.g., Edeh v. Midland Credit Mgmt., Inc., No. 09-CV-1706, 2010 WL 3893604, at *3 (D. Minn. Sept. 29, 2010) (holding that reporting a consumer's debt to a credit-reporting agency constitutes "collection of the debt" under § 1692g(b)), aff'd, No. 10-3441, 2011 WL 904504 (8th Cir. Mar. 17, 2011) (unpublished per curiam opinion).

violated the FDCPA by filing their lawsuit *before* complying with the verification requirement. Under North Carolina Rule of Civil Procedure 3(a), "[a] civil action is commenced by filing a complaint with the court." The North Carolina General Statutes Commission's comment on Rule 3 describes the rule as "provid[ing] an easily identifiable moment in time when it is possible definitely to say that an action has been 'commenced.'" N.C. R. Civ. P. 3 cmt. The filing of a complaint sets in motion the wheels of the North Carolina judicial system.[17] Thereafter, a summons must be issued within five days, and "[t]he complaint and summons shall be delivered to some proper person for service," such "proper person" generally being the sheriff of the North Carolina county where service is to be made. N.C. R. Civ. P. 4(a). Consequently, the critical moment at which Defendants began their "collection of the debt" with respect to the lawsuit was when they filed their complaint with the state court. At no time prior to this did Defendants even arguably attempt to satisfy the "mailing" requirement of § 1692g(b).[18]

---

[17] Under certain circumstances, a civil action may also be commenced in North Carolina by the issuance of a summons prior to the filing of a complaint with the court. See N.C. R. Civ. P. 3(a). However, there is no indication in the record that Defendants' action began this way, and even if there were, it would not help Defendants, because it would only move the commencement of their state court action earlier.

[18] Garcia-Contreras cites several opinions consistent with this conclusion insofar as they found violations of § 1692g(b) where, after the consumer disputed the debt, the debt collector filed a lawsuit against the consumer without providing any prior verification.

This result is not inconsistent with <u>Gough v. Bernhardt &</u>
<u>Strawser, PA</u>, No. 1:05-CV-00398, 2006 WL 1875327 (M.D.N.C. June
30, 2006). In <u>Gough</u>, the debt collectors commenced a state
court collections action against the consumer and served him
with a summons and complaint, to which were attached an
affidavit from an employee of the original creditor and a copy
of a credit card statement in the consumer's name. <u>Id.</u> at *1,
*5. Within thirty days, the consumer sent a written notice of
dispute to the debt collectors requesting verification of the
debt. <u>Id.</u> at *1. According to the consumer, the debt
collectors continued to move forward with the state court
collections action without providing the required verification.
<u>Id.</u> When the consumer brought an FDCPA action against the debt
collectors, this court held that the attachments to the state
court complaint sufficed to verify the debt. <u>Id.</u> at *5.
Because in <u>Gough</u> the verification was provided *before* the
consumer even disputed the debt, <u>Gough</u> does not apply to the
timing issue present here.

Having considered all the parties' arguments and the
statutory language of § 1692g(b), the court holds that because
Defendants had previously engaged the mechanisms of the FDCPA,

---

However, these opinions did not address the argument that the
complaints themselves constituted verification. <u>See</u> <u>Anderson</u>, 361 F.
Supp. 2d at 1380-83; <u>see also</u> <u>Lietz</u>, 2006 WL 335854, at *1-*2 (finding
a potential violation of § 1692g(b)).

their commencement of litigation in response to Garcia-
Contreras' request for verification on these facts violated the
verification requirement of that statute.

### 3. Defendants' Constitutional Arguments

Defendants' final objection to the Recommendation is that
"the activity of the Defendants in filing and prosecuting a
civil action upon the debt at issue may not, consistent with the
United States Constitution, form the basis of any civil
liability." (Doc. 39 at 6.) First, they argue that an
interpretation of the FDCPA such as this court has just adopted
would create "an impermissible restraint upon the right of the
creditor to 'petition the government for a redress of
grievances,' which right is secured to the creditor by the First
Amendment of the United States Constitution." (Id.) Second,
Defendants contend that the FDCPA, if interpreted in the way
this court has done, would be "outside of the scope of power
granted to the Congress by the 'Commerce Clause' of the United
States Constitution." (Id. at 6-7.) The Magistrate Judge
discussed these contentions at length and rejected both of them.
(Doc. 35 at 26-31.) Defendants object to this portion of the
Recommendation on the same grounds presented to the Magistrate
Judge. (Compare Doc. 39 at 7-8, with Doc. 26 at 11-12.) This
court has conducted a de novo review and will adopt those

portions of the Magistrate Judge's Recommendation rejecting these constitutional challenges as lacking merit.[19]

Therefore, the court will grant Garcia-Contreras' motion for summary judgment as to the "failure to cease collection" claim and will deny Defendants' motion for summary judgment as to that claim.[20]

In light of these rulings, Defendants' counterclaim seeking a declaratory judgment that the conduct complained of does not violate the FDCPA and alleging that Garcia-Contreras brought her action in bad faith and for purposes of harassment lacks merit. Accordingly, the court will grant Garcia-Contreras' motion for summary judgment as to Defendants' counterclaim and deny Defendants' motion for summary judgment.

## III. CONCLUSION

Having conducted a de novo review of those portions of the Magistrate Judge's Recommendation to which objection was made, and for the reasons set forth above,

---

[19] Defendants originally asserted that the Due Process Clause of the Fifth Amendment also protected them from liability under the FDCPA for commencing litigation against Garcia-Contreras. (Doc. 26 at 11.) However, Defendants never provided any arguments supporting this position, the Magistrate Judge rejected it (Doc. 35 at 32-33), and Defendants have not objected to the Magistrate Judge's ruling on this point. Therefore, the court will adopt the Magistrate Judge's rejection of this constitutional challenge as well.

[20] In their answer, Defendants assert the affirmative defense of bona fide error pursuant to 15 U.S.C. § 1692k(c). (Doc. 4 at 11.) However, they have not advanced any argument in support of this defense in any of their briefs.

IT IS THEREFORE ORDERED that the Memorandum Opinion, Order, and Recommendation of United States Magistrate Judge (Doc. 35) is ADOPTED IN PART (as to Parts I, II, III(A)(2)(b) in part (¶¶ 2-4 on litigation as "collection activity"), III(C)(2)(a)(i), and III(C)(2)(a)(iii)) and otherwise DECLINED.

IT IS FURTHER ORDERED as follows:

(1) The Joint Motion to Dismiss Pursuant to Rule 12(b)(6) by Defendants Brock & Scott, PLLC, and Bullhead Investments, LLC (Doc. 4 at 1-7) is DENIED as to both of Plaintiff Crystal Garcia-Contreras' FDCPA claims: her "overshadowing" claim under 15 U.S.C. § 1692g and her "failure to cease collection" claim under 15 U.S.C. § 1692g(b).

(2) The Motion for Judgment as a Matter of Law by Plaintiff Crystal Garcia-Contreras (Doc. 9) is DENIED as to both of her FDCPA claims and Defendants Brock & Scott, PLLC's and Bullhead Investments, LLC's counterclaim.

(3) The Motion for Summary Judgment by Plaintiff Crystal Garcia-Contreras (Doc. 25) is GRANTED as to her "overshadowing" claim under 15 U.S.C. § 1692g and her "failure to cease collection" claim under 15 U.S.C. § 1692g(b) and GRANTED as to Defendants Brock & Scott, PLLC's and Bullhead Investments, LLC's counterclaim, which is DISMISSED.

(4) The "Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Motion

to Dismiss and/or for Summary Judgment" by Defendants Brock &
Scott, PLLC, and Bullhead Investments, LLC (Doc. 26), construed
as a motion for summary judgment, is DENIED.

(5) Within 30 days, Plaintiff Crystal Garcia-Contreras
shall file any request for calculation of damages, including how
the factors in 15 U.S.C. § 1692k(b)(1) governing determinations
of statutory damages should apply in this case, and any request
for attorneys' fees. The parties are directed to consult with
one another in an effort to reach an agreement concerning
attorneys' fees prior to the filing of any request for
attorneys' fees.

                                    /s/    Thomas D. Schroeder
                              United States District Judge

March 31, 2011